STALLINGS *v.* STATE OF INDIANA.

[No. 31,165. Filed April 11, 1968.]

*Stanley A. Levine,* and *Nieter, Smith, Blume, Wyneken & Dixon,* of Fort Wayne, for appellant.

*John J. Dillon,* Attorney General, and *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, J.—The appellant herein is appealing from a conviction in the Circuit Court of Allen County, Indiana, of manslaughter.

Prosecution was commenced on the basis of an indictment charging appellant with murder in the second degree; appellant entered a plea of not guilty; and thereafter trial was had by jury. The trial resulted in the jury finding appellant guilty of manslaughter, and upon this verdict the trial court entered judgment accordingly and sentenced appellant to serve a term of two to twenty-one years in the Indiana State Prison.

The error assigned and relied upon by the appellant is the overruling of his motion for new trial.

A summary of the evidence leading up to the death of Adolphus Taylor reveals the following. Appellant lived at 1155 Division Street, Fort Wayne, Indiana. This address was a house with several apartments. Appellant occupied a first floor apartment under a stairway leading to the second floor. He was also the rent collector for the owner. On August 8, 1966, at approximately 12:10 A.M., Rose Marie Davidson came to appellant's apartment and slept with him until 9:00 or 9:30 A.M. Sometime during the morning Adolphus (Al) Taylor came into appellant's apartment. Bessie Materson, who lived in the apartment across the hall, was also present. It is indicated in the record that appellant and Taylor were friends. A short time later appellant and Taylor went to Bessie's apartment, and when Taylor returned he told Rose Davidson that appellant had shaken hands with him. Appellant returned to his apartment and started shaving. Taylor

went to the icebox and appellant said to Rose, "Now, you see, I asked them nice not to take over my house." Taylor told him to shut up, and appellant replied that he didn't have to shut up in his own house. Taylor then started to shove Rose around, and she asked Taylor to leave, Taylor replied, "I'm not going to go no damn place." Taylor then gave Rose Davidson a shove and appellant said, "Man, you can just forget it." Taylor replied, "I'm not going to forget it. If you don't shut up talking to me I'll ride you out of here like a damned mule." Taylor then hit appellant in the face or some place on his upper body. The two men began to fight and sometime during this struggle appellant obtained a gun and shot Taylor. Taylor died as a result of a gunshot wound. During the altercation a number of shots were fired.

In his motion for new trial appellant specifically contends that a new trial should have been granted because of an error of law occurring at trial. Appellant urges that the trial court's admission of State's exhibit 5 into evidence, over the objection of appellant, was prejudicial error. Appellant's objection was that the exhibit was immaterial, irrelevant and the improper admission of testimony. The basis of this objection was that there was no showing that certain holes, designated on the exhibit as bullet holes, were connected with the shooting of Taylor nor that they were fired by the appellant at the time and under the circumstances in question.

State's exhibit 5, a scale drawing on cardboard made by State's witness Captain Richard Miller of the Fort Wayne Police Department, purported to show the living room, bathroom and entranceway of appellant's apartment. There was lettering thereon showing the location of three bullet holes. The record of evidence reveals that there was no proof that these holes were in any way related to shooting of Taylor. There was no showing that the holes were in fact bullet holes, and there was no showing that if such were bullet holes, that the bullets were fired by appellant.

Charts and diagrams may be received into evidence after laying a proper foundation, if the fact to be evidenced by the chart or diagram is itself otherwise relevant, material and competent. *Reynolds* v. *State* (1944), 222 Ind. 600, 56 N. E. 2d 495; 3 Wigmore, *Evidence* §§ 790, 791, 792, (3rd ed. 1940); 1 Ewbanks, *Indiana Criminal Law*, § 395, (1956).

Dean Wigmore observes that:

". . . (W)henever such a document (purporting to be a map, picture, or diagram) is offered as proving a thing to be as therein represented, then it is offered testimonially, and it must be associated with a testifier." 3 Wigmore, *Evidence* § 790 (3rd ed. 1940).

In the instant case, State's exhibit 5 was introduced into evidence, and therefore purported to speak for itself; however, as to what it showed, in respect to certain holes being bullet holes, it did not have the testimony of any witness to relate said holes to any issue in the case. As stated above a basic requirement for the admissibility of a diagram is that it be material; the facts which the evidence tends to prove or disprove, in order to be material, must relate to an issue in the case. *Kiefer* v. *State* (1958), 239 Ind. 103, 107, 114, 153 N. E. 2d 899, 900, 903; *McKee* v. *Hasler* (1951), 229 Ind. 437, 469, 98 N. E. 2d 657. The appellee, State of Indiana, contends that the bullet holes would be material and relevant to the issue of self-defense. Appellant does not argue that relevant evidence should not be admitted, but contends that the admission of State's exhibit 5, with the purported bullet holes, was not connected by any evidence to the shooting of Taylor.

A further requirement of admissibility is that the offered evidence must logically tend to prove a material fact. This is the requirement of relevancy. *State* v. *Lee* (1949), 227 Ind. 25, 83 N. E. 2d 778; *Smith* v. *State* (1938), 212 Ind. 605, 10 N. E. 2d 899. This Court has equated

legal relevancy with materiality and has applied a further concept, in that evidence may be excluded as not material or legally relevant either because it is too remote, too uncertain or too conjectural. *State* v. *Lee, supra.* The pictorial testimony of bullet holes did not logically tend to prove a material fact, and the inferences to be drawn from the exhibit were too remote, uncertain, conjectural and speculative.

The appellee, State of Indiana, sought to build an inference that these holes were made by bullets fired at the deceased, merely because the holes were located in the appellant's apartment. As stated heretofore there is no evidence connecting the purported bullet holes with the shooting of Taylor nor with the appellant. Yet the diagram in issue was displayed to the jury for the obvious purpose of suggesting that appellant fired at Taylor in hot pursuit in order to make more certain an inference of malice. It is interesting to note that the appellee, State of Indiana, says in its brief that there was *no evidence* of malice, express or implied; that there is no evidence tending to prove that before the altercation the appellant was entertaining thoughts of hatred or revenge toward Taylor; that in fact appellant and Taylor had shaken hands shortly before the fight. This was an attempt to build an inference upon speculation, with the speculation being that appellant had fired the shots and this based upon Captain Miller's opinion. We must agree with appellant that the opinions and conclusions written on the diagram did not logically tend to prove any material fact in issue. If the fact to be evidenced by the diagram is not itself admissible, it cannot be proved by the exhibit. See *State* v. *Bray* (Mo. App. 1955), 278 S. W. 2d 49 on the building of inferences from speculative exhibits.

We hold that it was prejudicial error for the trial court to admit the diagram (State's exhibit 5) after proper objection by the appellant since the exhibit was immaterial and irrelevant. *Caveney* v. *State* (1936), 210 Ind. 458, 4 N. E. 2d 137. It was prejudicial to the appellant for

the reason that it tended to create an illogical inference of malice based only upon speculation and for the further purpose of improperly attempting to negate the defense of self defense.

For the foregoing reasons we hold that the judgment of the trial court should be reversed.

Therefore, the judgment is reversed and this cause is remanded with instructions to sustain the appellant's motion for a new trial and further proceedings not inconsistent with this opinion.

Judgment reversed.

Lewis, C. J., Arterburn, Jackson and Mote, JJ. concur.

NOTE.—Reported in 235 N. E. 2d 488.