STALLINGS *v.* STATE OF INDIANA.

[No. 869S189. Filed December 15, 1970. Rehearing denied March 3, 1971.]

*Stanley A. Levine, Nieter, Smith, Blume, Wyneken & Dixon,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellant was charged with voluntary manslaughter as defined in Burns Ind. Stat., 1956 Repl., § 10-3405. The cause was submitted for trial to the court without a jury. The court found appellant guilty of the included offense

of aggravated assault and battery as defined in Burns Ind. Stat., 1970 Supp., § 10-410.

The appellant in this case was originally tried on a charge of second degree murder and after conviction for the crime of manslaughter, appeal was had to this Court. This Court in an opinion filed April 11, 1968, reversed that conviction. See *Stallings* v. *State* (1968), 250 Ind. 256, 235 N. E. 2d 488, 14 Ind. Dec. 15.

The facts as disclosed by the record are as follows:

On August 8, 1966, about noon the decedent came to an apartment building in which appellant's apartment was located. There was evidence that the appellant and the decedent were friends and that the decedent came to appellant's apartment inquiring as to the whereabouts of other tenants in the building. Rose Marie Davidson was a guest in appellant's apartment when decedent arrived. A conversation developed between appellant and the decedent concerning a fifty-cent debt between them. The conversation was first in a joking manner, but soon developed into hostility. The appellant was shaving in the bathroom which opened onto the living room and as the conversation continued the decedent went into the bathroom and struck the appellant causing him to fall into the bath tub. After appellant regained his footing, he obtained a gun from a shelf in the bathroom.

Miss Davidson's testimony was that the two men continued to struggle and that during the struggle shots were fired. The decedent stated that appellant had shot him and left the apartment. She testified that they were closer than three or four feet when the fatal shot was fired.

After the decedent left, the appellant "stood there scared to death, shaking all over, looking as if he didn't know which way to go or what to do."

The decedent ran outside and opened the door to his car, but apparently was unable to enter. He fell to the sidewalk and died.

The appellant admitted firing the gun two or three times. He claimed self-defense in that Taylor had hit him several times.

Testimony by Police Sergeant Leroy Cook was that in the course of his investigation the appellant took him into the apartment and showed him where the decedent was standing at the time the shot was fired and where the appellant was standing, indicating a distance of some nine feet between the two men at the time the shot was fired. There is thus a conflict of evidence between the testimony of Miss Davidson and the statement made by appellant to the officer immediately after the incident.

Appellant first claims error in that there is no substantial evidence of probative value that the infliction of great bodily harm by the appellant was done intentionally or knowingly and unlawfully, and that the finding of guilty of aggravated assault and battery was not sustained by the evidence. It is appellant's position that the finding of guilty of the lesser included offense was equivalent to a finding of not guilty on the charge of voluntary manslaughter. Appellant then argues that if the evidence was not sufficient to convict him of voluntary manslaughter, it would not be sufficient to convict him of aggravated assault and battery because the intent would be the same. That is, if there was no evidence that he intended to kill the decedent by firing the shot there would likewise be no evidence that he intended to inflict great bodily harm on the decedent. With this we cannot agree.

Each case must be determined within the framework of its own set of facts. In the instant case the evidence was that the appellant and the decedent were fighting at the time. The evidence indicated that they were friends and that the dispute was one of a minimal nature, yet the appellant saw fit to fire a deadly weapon two or three times at close range. This presents a set of facts to the court from which it could reasonably be deduced that the appellant deliberately fired the shots with an intent to injure the decedent, but without the specific intent to kill him which

would be required for a conviction of voluntary manslaughter. We have repeatedly stated that we will not weigh the evidence on appeal. *Smith* v. *State* (1969), 252 Ind. 425, 18 Ind. Dec. 189, 249 N. E. 2d 493.

Appellant also argues that the evidence in this case clearly discloses that he fired the gun in self-defense. It is true that appellant was in the bathroom in his own apartment and that regardless of who started the argument between appellant and decedent, it was the decedent who first physically attacked the appellant striking him hard enough to cause him to fall into the bath tub. It is true that when a person is attacked, especially in the confines of his own home, courts will look to the situation as it would reasonably appear to the person being attacked as to what force would be necessary to resist the attack, and this can only be determined from the standpoint of the person being attacked under all of the existing circumstances. In the case at bar the circumstances were before the court. It was the court's duty to consider and weigh these facts to determine whether or not the appellant had fired the gun thus injurying the decedent in the exercise of his right of self-defense. *Bange* v. *State* (1958), 237 Ind. 422, 146 N. E. 2d 811.

The fact that the decedent was unarmed at the time of the fight, the fact the two men were friends and that the argument was originally of a rather insignificant matter, and the fact that the appellant fired more than one shot were all facts from which the trial court was fully justified in finding that the appellant in injuring the decedent had exceeded the bounds allowed under the law of self-defense and had at the time of the infliction of the injury upon decedent become the aggressor to an unreasonable degree.

Where as here the evidence is such that the trier of fact might reasonably draw two inferences, one of guilt or one of innocence, it is not within the province of this Court to determine which inference should control. This comes within the province of the trier of fact, In the case at

bar the trial court determined from the facts that the appellant had used force in excess of that necessary to repel the attack and in so doing had perpetrated the crime of aggravated assault and battery. We will not review the facts to set aside that decision. *Schlegel* v. *State* (1950), 228 Ind. 205, 91 N. E. 2d 167; *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445.

Appellant next claims the trial court erred in permitting testimony from Police Officer Robert Paulsen concerning statements made by the appellant in response to a question by Officer Paulsen to the appellant as to whether or not he was the person who shot the decedent. Appellant claims this evidence was obtained in violation of his constitutional rights as set forth in *Miranda* v. *Ariz.* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and *Escobedo* v. *Ill.* (1964), 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758.

Officer Paulsen testified that shortly after he arrived at the scene the appellant appeared and that as appellant and the Officer walked toward each other Officer Paulsen asked, "Did you shoot this man?" to which the appellant replied, "Yes, sir, I did."

Appellant also claims error in the admission of the testimony of Sergeant Cook of the Ft. Wayne Police Department concerning certain admissions made by the appellant. Sergeant Cook testified that Officer Paulsen brought the appellant to him informing him that appellant had admitted the shooting, whereupon the appellant immediately attempted to relate the facts to Sergeant Cook. Sergeant Cook stopped him and warned him he had a right to remain silent, that anything he said would be used as testimony in court, and that he had a right to have an attorney and have that attorney present. Sergeant Cook then placed the defendant under arrest and asked him if he had shot the decedent, to which appellant immediately replied that he had, and that he would take Sergeant Cook into the apartment and show him how it

happened, which he did. So far as appellant's statement to Officer Paulsen is concerned, we see no need for the giving of the constitutional warnings as required in *Miranda, supra*.

The Supreme Court of the United States in the *Miranda* case at pages 477, 478 stated:

> ". . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.
>
> "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . ."

The case at bar closely parallels a recent case decided by the Circuit Court of Appeals for the Fourth Circuit. In that case an officer had received communication concerning the identity of a person alleged to have stolen an automobile and a description of the stolen car. He observed a car fitting the description in front of a bar. He went inside where he found a man fitting the description of the alleged thief. He asked the suspect how long he had been in town, whether he owned a car, his means of transportation, whether he was employed, and finally whether he owned the automobile which was parked in front of the bar. In ruling that this testimony was proper in the absence of a prior *Miranda* warning, the Court stated:

> "This court does not read *Miranda* as requiring officers to preface with a warning all non-coercive questioning conducted in the course of a routine investigation. . . .

". . . In the complete absence of the element of coercion, actual or potential, or police dominance of the individual's will, the mild police activity shown here should not prevent the introduction of statements freely made. The evils with which the Court was concerned in *Miranda* are not present here. . . ."

*U. S.* v. *Gibson* (4th Cir., 1968), 392 F. 2d 373, 376.

In the case at bar the evidence is that appellant was not under arrest or under any type of coercion or custodial interrogation at the time of the conversation between appellant and Officer Paulsen. It was not error for the trial court to allow Officer Paulsen to relate this conversation in evidence.

Immediately following appellant's arrest by Sergeant Cook he was advised of his constitutional rights. However, he claims this advice was inadequate in that Officer Cook failed to state that appellant was entitled to an attorney at no cost to himself. There is no claim by appellant that he was in fact unable to obtain counsel, and there is certainly no indication from this record that he wanted counsel in any event. The appellant had already stated before his arrest that he had shot the decedent. Sergeant Cook had to interrupt the appellant in an attempt to advise him of his constitutional rights at the scene of the crime. There is absolutely no evidence in this record which would bring this confrontation between Sergeant Cook and the appellant within the realm of custodial interrogation as defined in *Miranda*. We see no element of coercion whatsoever in the obtaining of appellant's version of the shooting. The fact that appellant was insisting on telling his story indicates that his statement was entirely voluntary and without coercion. The fact that Sergeant Cook's warning was not complete to the point of advising appellant of his right to counsel at state expense does not automatically render the statement made by appellant inadmissible. We hold that the trial court was justified in finding that the statements made by the appellant at the

scene of the crime were freely and voluntarily given and that there was no duress or improper custodial interrogation by the officers.

The trial court is, therefore, in all things affirmed.

Hunter, C.J., and Arterburn, J., concur; DeBruler, J., dissents with opinion in which Jackson, J., concurs.

### DISSENTING OPINION

DEBRULER, J.—It is conceded by the State and acknowledged by the majority that the appellant did not receive an advisement of his right to pauper counsel in the event he had no means to hire private counsel prior to giving his statement to Officer Cook.

In spite of the clear mandate of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, that such advisement be given, the majority holds this statement admissible. The majority is clearly in violation of the holding in the *Miranda* case which is stated in the case as follows:

> "To summarize, we *hold* that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence

obtained as a result of interrogation can be used against him." (Emphasis added.) 384 U. S. 478, 479.

The majority bolsters its conclusion here by a further holding that no *Miranda* warnings were required to be given to defendant since the statement made by him was not made during custodial interrogation. In my judgment the defendant was in custody at the time he gave the statement to Officer Cook and *Miranda* applies. My conclusion is based upon the following evidence:

1. The defendant had been placed under arrest on a charge of pre-murder by Officer Cook.

2. The defendant was in the physical custody of Officers Cook and Paulsen.

3. Officer Cook administered the faulty *Miranda* warning to the defendant before this statement was made.

This is a typical case of a custodial interrogation preceded by an incomplete *Miranda* warning.

The majority seems to adopt the position that Officer Cook had no duty to advise the defendant of his right to pauper counsel, since the defendant failed to claim that "he was in fact unable to obtain counsel" or to make an indication "that he wanted counsel in any event." This position is likewise at odds with the *Miranda* holding quoted above. The duty to administer the advisement of the right to pauper counsel is not made contingent upon, or does not arise upon, the claim of the defendant that he is indigent or that he wants counsel. It must be given as part of a set of rules of procedure, in order to assure us all that the right to counsel is not being denied to those who are impoverished. The majority, in its position, asks that the non-indigency of the defendant be presumed from his failure to claim that he was indigent. That the *Miranda* rule provides the better assurance that an impoverished accused has not been taken advantage of, there is no doubt in my mind.

I would remand for a new trial.

Jackson, J., concurs.

NOTE.—Reported in 264 N. E. 2d 618.