Ronald PETTIT, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1281A365.

Court of Appeals of Indiana,
First District.

Sept. 21, 1982.

Susan K. Carpenter, Public Defender, M. E. Tuke, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jack T. Kolze, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Ronald Pettit (Pettit) was convicted by a jury in the Dearborn Circuit Court of three of seven charges, namely: Count II resisting law enforcement with a deadly weapon under Ind.Code 35–44–3–3 (Supp.1981), Count III criminal recklessness with a deadly weapon under Ind.Code 35–42–2–2 (Supp.1981), and Count V resisting law enforcement by fleeing under Ind.Code 35–44–3–3(a)(3). From a sentence of imprisonment he appeals.

We affirm.

## STATEMENT OF THE FACTS

At approximately 9:30 to 9:45 p.m. on December 26, 1980, police officers of Dearborn County and Lawrenceburg surrounded Pettit's van. The van was parked in a parking lot across the street, 65 to 85 feet from the door of the Red Feather Bar and Lounge. Pettit was seen by Deputy Sheriff Heffelmire sitting in the rear of the van with a rifle. The rifle, equipped with a telescopic lens, was resting on a table and pointed in the general direction of the door of the Red Feather. The police had been alerted by a call from Pettit's wife stating that Pettit was on his way to the Red Feather to shoot one Art Eglain, who was believed to be inside. The motive appeared to be that Eglain had beaten and robbed Pettit earlier in the evening.

Deputy Heffelmire attempted to talk Pettit into surrendering, but Pettit pointed the rifle at him and stated that he did not want to kill Heffelmire, but if necessary he would not hesitate to do so. Thereafter, eluding the police attempt to box him in, Pettit fled the parking lot in the van, and a chase ensued with six or seven police cars participating, their lights flashing and sirens wailing. Moments later the officers were successful in blocking a street and bringing Pettit to a halt. After rescuing a woman and a child who were also caught in the barricade, Officer Heffelmire again tried to persuade Pettit to surrender, and again Pettit menaced him with the rifle. Ultimately he laid the rifle down, and was promptly subdued. No shots were fired throughout the incident. The rifle was retrieved. It was a .22 caliber bolt action, clip fed Remington. No shell was found in the chamber, nor was there a clip in the rifle, but a clip with four shells in it and a box of shells, all long rifle and high velocity which fit the rifle, were found on Pettit's person. Subsequent tests proved that the rifle was operational and could be fired either by being hand fed or by the clip. The clip was

damaged but would work with difficulty if one was familiar with it.

Pettit's convictions in Count II and Count III rested upon Pettit's actions of threatening Deputy Heffelmire in the parking lot with the rifle, and Count V rested upon his fleeing the parking lot.

## ISSUES

The specific issues preserved for review by this court are:

I. Whether the verdicts of the jury and judgment of the court were not sustained by sufficient evidence and were contrary to law;

II. Whether the court erred in limiting defense counsel's cross examination by curtailing inquiry into the reputation of Art Eglain;

III. Whether by allowing State's witness Heffelmire to offer a lay opinion as to Pettit's state of mind, the court allowed the State to invade the province of the jury and thereby prejudice Pettit;

IV. Whether the court erred in permitting the State to ask Pettit's opinion as to whether Pettit believed that law enforcement officers could shoot him under the particular circumstances of the incident;

V. Whether the court erred in denying Pettit's Motion for Mistrial; and

VI. Whether the court erred by denying to Pettit the right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

## DISCUSSION AND DECISION

*Issue I. Sufficiency of the evidence*

When reviewing the sufficiency of the evidence, we view it in the light most favorable to the state. We neither weigh the evidence nor judge the credibility of witnesses. We will affirm the conviction if there is substantial evidence of probative value from which the trier of facts could reasonably infer guilt beyond a reasonable doubt. *Spears v. State,* (1980) Ind.App., 412 N.E.2d 81; *Trader v. State,* (1975) 165 Ind. App. 174, 331 N.E.2d 469.

*Resisting Law Enforcement*

The statute creating this offense is Ind. Code 35–44–3–3, as follows:

"Sec. 3. (a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor. However, the offense is a Class D felony if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person."

Pettit argues that the evidence is insufficient to prove the elements of intent, and whether a deadly weapon was used or drawn. He claims that the rifle was not loaded, thus negating those elements.

■ Ind.Code 35–41–1–2, the definitional section of the Criminal Code, includes in the definition of "deadly weapon" an unloaded firearm. Thus even if the rifle were unloaded it would still be a deadly weapon. The same section defines "forcible felony" to include the threat of force against a human being. Knowledge and intent may be inferred from the facts and circumstances of each case. *Capps v. State,* (1972) 258 Ind. 565, 282 N.E.2d 833; *Trader, supra.* Clearly, therefore, the acts of Pettit in holding a policeman at bay with a rifle, which he represented by word and act to be loaded, while the policeman was attempting to persuade him to surrender can be characterized as resisting law enforcement by drawing or using a deadly weapon.

*Criminal Recklessness*

██ This offense is defined in Ind.Code 35–42–2–2 as follows:

"Sec. 2. (a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. However, the offense is a:

(1) . . .

(2) Class D felony if it is committed while armed with a deadly weapon."

Pettit was convicted under this subsection of a Class A misdemeanor. He contends that there was no evidence of any act that created a substantial risk of bodily injury because there was no ammunition in the rifle, no shots were fired, and the rifle would be difficult to load because the clip was broken. As stated above, even an unloaded gun is considered a deadly weapon. Contrary to Pettit's contention the record does not disclose uncontroverted evidence that the rifle was not loaded. Where different conclusions can be drawn, a question of fact for the jury exists. *McFarland v. State,* (1979) Ind.App., 384 N.E.2d 1104. For evidence that the rifle was not loaded, Pettit relies upon his testimony to that effect and other testimony of the rifle's condition when the officers took it from him. However, when he surrendered, Pettit had a loaded clip and a box of ammunition on his person. The evidence revealed that in the parking lot he stated that he had come to take care of Art Eglain and had a rifle with a scope pointed toward the door of the Red Feather. Pettit had ammunition and a clip that would work, though not well, and he threatened to shoot Heffelmire if necessary. The mere fact that the rifle was not loaded at the end of the chase is not conclusive proof that it was not loaded in the parking lot. Persons knowlegeable of weapons realize that a bolt action rifle can be unloaded in an instant by working the bolt with the flick of the wrist. From all of the circumstances and Pettit's overt representations, the jury could legitimately infer that the rifle was loaded in the parking lot. We hold that the above evidence that Pettit menaced the officers with a loaded rifle was sufficient to support the criminal recklessness conviction.

*Fleeing a police officer*

██ Here Pettit argues that Heffelmire did not order him to stop and therefore his leaving the parking lot was not fleeing. The case of *Spears, supra,* held that under Ind.Code 35–44–3–3(a)(3) the evidence need not show the defendant was ordered orally to stop, as the order could be visual. In *Spears* the officer merely approached within three feet, and the court held that the evidence supported the conclusion that when the defendant sped away, he knew he had been commanded to stop. Here the officers tried to talk Pettit into surrendering, tried to box him in, and pursued him with lights and sirens on. Such evidence is sufficient to support the conviction.

*Issue II. Reputation of victim*

██ During cross examination of Deputy Heffelmire by Pettit, testimony was elicited concerning the unsavory character of Art Eglain. The court then sustained the State's objection to a question of whether the officers had stated in jest that if Pettit had shot Eglain he would have deserved a medal. Pettit assigns that ruling as error, claiming that since Eglain was a potential victim, his reputation for violence was material, citing *Bowlus v. State,* (1891) 130 Ind. 227, 28 N.E. 1115. That case and others more recent hold that in a prosecution for assault and battery previous threats made by the prosecuting witness and communicated to the accused prior to the commission of the offense are competent evidence when self defense is in issue. Such is the rule. Here, self defense was not in issue. The victim of the crimes of which Pettit was convicted in Counts II and III was officer Heffelmire. The reputation of third persons for violence was irrelevant. Evidence, to be admissible, must logically tend to prove a material fact. *Stallings v. State,* (1968) 250 Ind. 256, 235 N.E.2d 488. The trial court has wide latitude in determining the relevancy of evidence. *Holt v. State,* (1978) Ind.App., 382 N.E.2d 1002.

We find no error in the court's ruling here.

*Issue III.  Observations concerning defendant*

▮ During the State's examination of Deputy Heffelmire in its case in chief, Heffelmire volunteered that when Pettit menaced him with the rifle in the parking lot, Heffelmire said at one point to officer Evans, "let's get our cans out of here, he's going to shoot one of us now." Pettit objected on the basis that the answer was gratuitous and not responsive to the question, which objection was overruled. Pettit claims the court's ruling was error. Examination of the transcript reveals that Pettit made no motion to strike the answer, motion for mistrial, or request for an admonition. Therefore, since the objection came after the answer, Pettit waived the issue. *Norton v. State,* (1980) Ind., 408 N.E.2d 514; *Goodpaster v. State,* (1980) Ind., 402 N.E.2d 1239; *See, Henderson v. State,* (1979) Ind., 395 N.E.2d 224. Absent the waiver, we perceive no error. Heffelmire's testimony prior to that in question revealed that as he talked to Pettit, Pettit became enraged and said he would shoot if necessary. Therefore, Heffelmire was merely relating facts and circumstances perceived by his own senses. *Norton, supra.*

*Issue IV.  Pettit's belief that officer could shoot him*

▮ Pettit took the stand and testified in his own defense. On cross examination he answered questions about the multi-car chase which ensued after he exited from the parking lot. He admitted seeing the police cars and the lights and hearing the sirens. He further admitted not stopping at an intersection. He volunteered that the reason he did not stop was that he was scared. Further examination revealed that he was scared of the police officers. After he had testified that he was scared of the police officers because they had a "right to shoot you at any time," and could have shot him under those circumstances, Pettit's counsel objected. He objected on the ground that Pettit was being questioned as

to his intent and his reasons for doing something (running away); that this was an attempt by the State to bait Pettit into losing his temper; and that the testimony was cumulative, was addressed to matters not in issue, misled the jury, and was irrelevant. The questions along this line ceased with the objection. Since Pettit made no motion to strike, motion for mistrial, or motion to admonish the jury, the question is waived. *Goodpaster, supra.* In any event we do not deem the questions irrelevant or prejudicial. They were statements of intent and purpose, that is, Pettit's state of mind and his reasons for fleeing the police officers. *See Starks v. State,* (1975) 163 Ind.App. 639, 325 N.E.2d 855. We hold no error was committed.

*Issue V.  Motion for mistrial*

In his case in chief, Pettit testified on direct examination of prior involvement with law enforcement authorities, including breaking and entering as a juvenile (resulting in a commitment to boys school), burglary, drunkenness, traffic offenses, and other misdemeanors. On cross examination the State asked him about being "charged" with assaulting a police officer with his car. Pettit moved for a mistrial. The court strongly admonished the jury and denied the mistrial. Pettit claims that the improper question characterized him as a person who routinely victimized police officers, and was prejudicial. He further argues that the admonishment of the jury did not cure the error.

▮ It is well settled that the trial court has wide latitude in determining whether a mistrial should be granted, and, absent a showing of a clear abuse of discretion, the trial court's ruling will be upheld. *Morris v. State,* (1980) Ind., 398 N.E.2d 1284; *Griffin v. State,* (1980) Ind., 402 N.E.2d 981. The standard to be applied by the trial judge in determining whether to grant or deny a defendant's motion for mistrial based upon prosecutorial misconduct is whether under all the circumstances the misconduct places the defendant in a position of grave peril to which he should

not be subjected. *Thompkins v. State,* (1978) Ind., 383 N.E.2d 347. An admonishment of the jury by the trial judge is presumed to cure the error until the contrary is shown. *See Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798.

Here Pettit has not shown that he was placed in grave peril, or that the admonishment did not cure the error. The trial judge was in a much better position to gauge the impact than we who must rely on a sterile transcript. We find no error.

*Issue VI. Competency of counsel*

When competency of counsel is challenged, there arises a presumption that counsel has been competent, and strong and convincing evidence is required to rebut the presumption. The appellant must show that what the attorney did or did not do made the proceeding a mockery of justice, shocking to the conscience of the reviewing court. In making this determination the court will not second-guess tactics or strategy. *Dull v. State,* (1978) 267 Ind. 549, 372 N.E.2d 171; *Herman v. State,* (1979) Ind., 395 N.E.2d 249. A charge of incompetency revolves around the facts and circumstances of each individual case. *Rivera v. State,* (1979) Ind.App., 385 N.E.2d 455.

Here Pettit testified in a hearing on the motion to correct errors about numerous complaints concerning the quality of representation he received, such as (1) inadequate interviews with him, (2) failure to investigate, and (3) failure to call his wife, brother, and other police officers as witnesses. There were other statements which amounted only to dissatisfaction with the outcome of the trial. We have examined the entire record, and we agree with Pettit's statement to the trial judge at sentencing; when asked whether or not he thought trial counsel was adequate, Pettit replied, "All in all, I think he's been pretty fair." The only portion of Pettit's complaints emphasized in the brief is the failure to call as witnesses Pettit's wife, Edna, and his brother. At the hearing on the motion to correct errors, Edna and Pettit's brother testified that they were at the parking lot and they did not hear Pettit say he would shoot anyone. Their testimony is equivocal. Edna initiated this whole matter when she alerted police to the fact that Pettit was going to the Red Feather to shoot Art Eglain. Further, Edna and Pettit's brother arrived on the scene after the episode at the parking lot was under way, and therefore did not observe all that took place. Further, because of the turmoil they would not necessarily have heard what Pettit said. In view of the overwhelming evidence of the stand-off in the parking lot, we fail to see how the statements of those witnesses would have affected the outcome. We find no merit in this contention.

For the above reasons, this cause is affirmed.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.