Donald Holloway MUNN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 384S98.

Supreme Court of Indiana.

March 25, 1987.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Donald Holloway Munn, was convicted, following jury trial, of rape, a class B felony [1] and received a sentence of fifteen (15) years imprisonment. On this direct appeal, defendant raises the following four issues for review:

1) Whether the trial court erred in barring testimony concerning the defendant's past sexual conduct with the victim;

2) Whether the trial court erred in not recessing the trial prior to the defendant's presentation of evidence;

3) Whether the trial court erred in allowing the arresting police officer to testify as to statements made by the defendant after his arrest; and,

4) Whether the evidence was sufficient to sustain the defendant's conviction for rape.

The defendant and the victim had become acquainted in December, 1981. At approximately 1:00 a.m. on December 22, 1982, the victim was awakened by the defendant knocking on her door. When the victim partially opened the door, the defendant requested a glass of water, pushed the door wide open and entered the apartment. The victim provided the defendant with the water and then opened the door and requested that the defendant leave. The defendant refused, slammed the door, grabbed the victim and stated that he wanted sex with her. When the victim resisted, the defendant attacked her and raped her repeatedly while threatening to kill her.

## Issue I

Prior to trial, the State filed a Motion in Limine requesting the court to prohibit defendant from questioning, making any reference, or offering evidence concerning the victim's past sexual conduct pursuant to Indiana's rape shield statute, Ind.Code § 35–37–4–4. In response, the defendant filed a motion and written offer of proof requesting the court to allow defendant to present evidence at trial concerning sexual relations between the defendant and the victim prior to the night of the alleged rape. In the resulting pretrial hearing, defendant testified that he had consensual sexual intercourse with the victim on two occasions: in the spring of 1982 and in September, 1982. He denied having intercourse with the victim on the night of the alleged rape. The trial court granted the State's motion, thereby barring the defendant's testimony concerning these prior instances of sexual conduct and prohibiting the defendant from inquiring into these matters when cross-examining the victim.

Indiana Code § 35–37–4–4, also known as the Rape Shield Statute, provides in relevant part as follows:

35–37–4–4. Prosecutions for sexual offenses—Evidence.—(a) In a prosecution for a sex crime as defined in IC 35–42–4:

(1) Evidence of the victim's past sexual conduct;

\*　　\*　　\*　　\*　　\*　　\*

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter.

(b) Notwithstanding subsection (a), evidence:

---

1. Ind.Code § 35–42–4–1(a)(1).

(1) Of the victim's or a witness's past sexual conduct with the defendant;

\* \* \* \* \* \*

may be introduced if the judge finds, under the procedure provided in subsection (c) of this section, that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(c) If the defendant or the state proposes to offer evidence described in subsection (b) of this section, the following procedure must be followed:

(1) The defendant or the state shall file a written motion not less than ten [10] days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case. This motion shall be accompanied by an affidavit in which the offer of proof is stated.

(2) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, and at the hearing allow the questioning of the victim or witness regarding the offer of proof made by the defendant or the state.

\* \* \* \* \* \*

At trial, the defendant testified that he was introduced to the victim on New Year's Eve, December 31, 1981, and that they became friends and had a close relationship. Defendant denied having sexual intercourse with the victim at the time of the rape. He presented alibi evidence through his own testimony and through that of other witnesses. Defendant now contends that he should have been permitted to present evidence of his past sexual relations with the victim for impeachment purposes. He further contends that such evidence would be relevant because of other testimony suggesting the possibility that the victim's accusations may have been motivated by her jealousy regarding the defendant's relationship with another woman. He argues that he should have been permitted to present such evidence because the victim testified, during cross-examination, that, although she was acquainted with the defendant and had talked to him on occasion, she had "never dated him."

The rape shield statute expressly permits evidence of the victim's past sexual conduct with the defendant upon an adequate showing of the following two prerequisites:

1. That such evidence is material to a fact at issue;

2. That its inflammatory or prejudicial nature does not outweigh its probative value.

In reviewing use of a rape shield statute, we have recognized the importance of caution in order to protect the right of confrontation assured by the Sixth Amendment to the United States Constitution. *Woodford v. State* (1986), Ind., 488 N.E.2d 1121; *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. The standard enunciated in *Lagenour* was whether the limitation prevented a defendant from conducting a "full, adequate and effective cross-examination[.]" *Id.* at 445, 376 N.E.2d at 478. The United States Supreme Court recently examined this issue in *Delaware v. Van Arsdall* (1986), 475 U.S. ——, ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682–683:

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas*, 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965), "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. [308], at 315, 39 L.Ed.2d 347, 94 S.Ct. 1105 [1110]. Indeed, " '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Id.*, at 315–316, 39 L.Ed.2d 347, 94 S.Ct. 1105 [1110] (quoting J. Wigmore, Evidence § 1395, p 123 (3d ed 1940)) (emphasis in original). Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying as a proper and important function of the constitutionally protected right of cross-examina-

tion." *Davis, supra,* at 316–317, 39 L.Ed.2d 347, 94 S.Ct. 1105 [1110] (citing *Greene v. McElroy,* 360 U.S. 474, 496, 3 L.Ed.2d 1377, 79 S.Ct. 1400 [1413] (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever was, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, ——, 88 L.Ed.2d 15, 106 S.Ct. 292 [295] (1985) (per curiam) (emphasis in original).

In this case, however, the trial court prohibited *all* inquiry into the possibility that [a prosecution witness] would be biases as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.

█ Because of the defendant's alibi defense, the excluded evidence is not relevant to any issue related to the victim's consent. However, the credibility of the victim as a prosecuting witness is a fact at issue to which the excluded evidence is relevant and material. Evidence tending to show jealousy as a possible motive for the victim's accusations against the defendant was certainly material to facts at issue. We note that the trial court expressly permitted the defendant to cross-examine the victim, and to present other evidence show-

ing various details regarding the nature and duration of their relationship. The only limitation imposed was upon evidence of prior sexual intercourse between the defendant and the victim. As recognized in the passage quoted from *Van Arsdall,* above, prohibition of all inquiry into the possibility of motive and bias may violate the Confrontation Clause, but trial courts are permitted to impose reasonable limits. Balancing the probative value against the inflammatory or prejudicial nature is within such limits. This determination is properly within the discretion of the trial court. *Thomas v. State* (1984), Ind., 471 N.E.2d 677. While there may be a difference of opinion regarding whether the inflammatory or prejudicial nature outweighed the probative value, we cannot say that the trial court abused its discretion in excluding the evidence.

█ With regard to defendant's argument that by testifying that she never dated the defendant, the victim "opened the door" to the issue, we observe that the statement by the victim was made in response to the defendant's cross-examination. If the defendant was harmed by the jury's hearing the victim's denial of a dating relationship, it is the defendant who bears the responsibility, as it was he who asked the question, not the State. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1128.

█ Moreover, even if the trial court had unconstitutionally prevented the defendant from cross-examination of the victim, such error would not necessarily require automatic reversal. In *Van Arsdall, supra,* the United States Supreme Court instructed:

Accordingly, we hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* [*Chapman v. California* (1967), 386 U.S. 18, 24, 17 L.Ed.2d 705, 87 S.Ct. 824, 828] harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might

nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

475 U.S. at ——, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–687. Recognizing that the defendant was given wide latitude to present evidence and cross-examine the victim regarding the nature and duration of their alleged relationship before the rape, excluding only evidence about prior sexual intercourse, we find that the exclusion of evidence regarding the prior sexual intercourse, standing alone, would have been harmless beyond a reasonable doubt.

### Issue II

Defendant next claims that the trial court erred in not recessing the trial on its second day, alleging that it was evident that the members of the jury were tired and inattentive to the testimony being elicited by defense witnesses.

These contentions are unsupported in the record. The only reference concerning the condition of the jury is as follows:

The Court: Anything else that you can think of?

Mr. Rogers: No. Does the Court still intend to proceed ahead with the defense case this evening?

The Court: Yes. As long as I continue to make the observation of the jury that they are staying alert and observant, I would like to proceed. And that is my judgment at this time.

 Defendant does not direct us to any other portion of the record which provides adequate support for his contention. To the contrary, the trial judge expressly found the jury alert. Furthermore, defend-

ant has waived the issue for failing to object at trial, *McBrady v. State* (1984), Ind., 459 N.E.2d 719, and for failing to present a complete record to the Court which would bear out his claim. *Brown v. State* (1983), Ind., 445 N.E.2d 82.

### Issue III

 Following defendant's arrest, Indiana Police Detective Frank Evans handcuffed the defendant, advised him of his Miranda rights, and placed him in the back seat of the squad car. While filling out an arrest slip, Detective Evans requested standard background information concerning the defendant's name, address, date of birth and social security number. Evans testified that in the course of eliciting this information, the following occurred:

He had asked me again what the charges was. I said, rape. And he said, was that [victim's name]? And I said yes. And he said, that happened when my name was Donald Holloway. My name is Donald Munn now. You can't charge me because that would be a double jeopardy.

Defendant concedes in his brief that the police advised him of his Miranda rights, and that he acknowledged his understanding of those rights. Nevertheless, defendant argues that the trial court erred by permitting Evans to testify as to the defendant's inculpatory statements because there was insufficient evidence to support a finding that defendant knowingly and intentionally waived his privilege against self-incrimination.

The State contends that the trial court properly admitted the testimony because the defendant volunteered his statements without inducement. In *Johnson v. State* (1978), 269 Ind. 370, 375–377, 380 N.E.2d 1236, 1240, we stated:

It is settled that the procedural safeguards of *Miranda* only apply to what the United States Supreme Court has termed "custodial interrogation." *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Bugg v. State* (1978) [267], Ind. [614], 372 N.E.2d 1156, 1158. Custodial interrogation refers to

questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Mathiason, supra,* 429 U.S. at 494, 97 S.Ct. at 711, 50 L.Ed.2d at 719. The concept of custodial interrogation does not operate to extend the *Miranda* safeguards to spontaneous voluntary statements, i.e. statements which are either not made in response to questions posed by law enforcement officers while the defendant is in custody, *Bugg v. State, supra,* or statements which are made before the officers are given an opportunity to administer the *Miranda* warnings. *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. Nor does *Miranda* apply to questioning by police in the course of a general, non-accusatory, investigation of a crime. *Miranda v. Arizona* (1966), 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694; *Stallings v. State* (1970), 255 Ind. 365, 264 N.E.2d 618, 620.

\* \* \* \* \* \*

The term "interrogation" has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. *Escobedo v. Illinois* (1964), 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977, 986. Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation. *See e.g., Bugg v. State, supra.* Rather, it is necessary to view the statement in the context in which it was made. If, after having done so, it does not appear that the purpose of the remark was to obtain a confession from the accused, *Miranda* is not triggered and it is not necessary that the accused first be advised of his rights.

In the case at bar, defendant was advised of his rights prior to making the statements. The defendant's statements were not elicited in the course of interrogation. There was no questioning by Detective Evans designed to bring forth a self-incriminating response by defendant. The inculpatory statements were voluntary and unsolicited. They were therefore admissible into evidence.

### Issue IV

Defendant contends that the jury ignored the testimony of the seven defense witnesses who supported his alibi defense, that the victim's testimony was incredible and unsubstantiated, and that the evidence at trial was insufficient to support his conviction.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant's argument is merely a request for this Court to reweigh the evidence and judge the credibility of the witnesses. It is well-settled that the uncorroborated testimony of a rape victim is sufficient to support a conviction. *Lamb v. State* (1984), Ind., 462 N.E.2d 1025, 1028; *Lewis v. State* (1983), Ind., 451 N.E.2d 50, 52–53; *Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1113. The victim in this case unequivocally identified the defendant as the man who forced her to submit to sexual intercourse. From her testimony the jury could reasonably conclude that the defendant was guilty beyond a reasonable doubt.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.