**Max ELLIOTT, Plaintiff-Appellant,**

v.

**WATKINS TRUCKING CO., Inc. and Ralph E. Standiford, Defendants-Appellees.**

**No. 16666.**

United States Court of Appeals Seventh Circuit.

Jan. 21, 1969.

Rehearing En Banc Denied March 6, 1969.

Harlan L. Hackbert, Paul Noland, Chicago, Ill., G. Edward McHie, Hammond, Ind., for plaintiff-appellant.

John E. Doran, Doran, Manion, Boynton & Kamm, South Bend, Ind., Gilmore S. Haynie, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for defendants-appellees.

Before CASTLE, Chief Judge, and KNOCH, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

Action for damages for personal injuries sustained in a collision of two trucks.[1]

On July 7, 1964, plaintiff Max Elliott was driving a tractor-trailer westward on U. S. Highway 30 near Knox, Indiana. He was very seriously injured when his truck hit the rear end of a semi trailer driven by defendant Standiford, also westbound. Standiford was driving very slowly because of a flat tire. He was attempting to reach a truck stop where he could get service. Standiford was occupying the right hand lane for westbound traffic. Elliott had been using the same lane, but an inner lane for westbound traffic was open. Elliott was unable to relate the facts of the accident, but apparently he did not see the Standiford truck until he was too close to avoid it. The collision occurred at about 5:50 a. m., E.S.T. Sunrise occurred a few minutes after 5:18, but the sky was overcast. One witness said, "it was just breaking daylight."

█ It is unnecessary to state the facts in detail. There was ample evidence on which to find Standiford negligent. He had at first pulled his truck off

---

1. Jurisdiction is founded on diversity. Except for an issue relating to privileged communications, the parties agree that the substantive law of Indiana controls.

the traveled lanes, but then had chosen to drive on at a speed variously estimated between 2 and 10 miles per hour. There was conflicting testimony as to the illumination of lights giving warning to the rear. That testimony coupled with testimony as to the weather and amount of natural light and the fact that another truck, preceding Elliott's, had obstructed Elliott's view of Standiford until the preceding truck veered into the open lane, narrowly missing Standiford, would have supported a verdict that Elliott exercised reasonable care. The jury could have found Standiford's conduct wilful and wanton misconduct rendering any contributory negligence immaterial. These were the critical issues, and the record presented classical jury questions with respect to each.

The district court elected to submit written interrogatories upon the three key issues, together with forms for a general verdict, pursuant to Rule 49(b), F.R.Civ.P. The jury returned a general verdict for Elliott and assessed damages at $35,000 (a clearly inadequate amount, under the evidence), but answered the interrogatories so as to find that (1) Standiford was guilty of negligence which was a proximate cause of the injuries, (2) Elliott was guilty of contributory negligence, and (3) defendant was not guilty of wilful and wanton misconduct.

Obviously the answers to the interrogatories could not, under Indiana law, be reconciled with the general verdict. Immediately after receipt of the verdict, the court said, "the court feels that we have no alternative except to enter judgment for the defendants notwithstanding the verdict." Judgment was so entered, and later the court denied plaintiff's motion for new trial, based, among other grounds, on the inconsistency between the answers and the general verdict. Plaintiff Elliott has appealed.

When, as here, the answers to the interrogatories are consistent with each other, but one or more is inconsistent with the general verdict, Rule 49 offers the court three alternatives: (1) judgment may be entered in accordance with the answers, notwithstanding the general verdict, or (2) the court may return the jury for further consideration of its answers and verdict, or (3) the court may order a new trial.

■ We do not agree with plaintiff that alternative (1), where the court accepts special findings and rejects the general verdict, invades the seventh amendment right to trial by jury. We think the rule is based on the premise that when a jury has specially found facts which compel a certain result as a matter of law and has, by general verdict, reached a result which the specially found facts do not permit, it may reasonably be assumed that the jury erred in the legal reasoning by which it proceeded from the specially found facts to the general verdict and not in the fact finding process.[2]

It happens in this case that the general verdict gives evidence of fault in itself and not in the special findings. The very inadequate award of damages suggests that the jury, having found Elliott partly at fault, preferred a home made variety of comparative negligence to the rule announced in the instructions that contributory negligence would bar recovery. The writer of this opinion, with a Wisconsin comparative negligence background, happens to believe that a comparative negligence doctrine serves the ends of justice. This case, however, must be decided according to Indiana law.

Plaintiff argues for a new trial because of error in instructions and in admission of evidence. We pass on these claims as follows:

■ *Instructions.* The judge gave an instruction, requested by plaintiff, defining wanton and wilful misconduct. He followed it with an instruction on the same subject, requested by defendants. Plaintiff's counsel objected, but said only "I think one [definition] is sufficient."

<hr>

2. See Moore, Federal Practice 2d ed. Par. 49.04, vol. 5, p. 2211, fn. 7.

His failure to point out error in its content is probably an adequate answer to his present argument.[3]

Moreover, although the defendants' instruction is longer and approaches the problem somewhat differently, we do not find that the difference would probably confuse or mislead the jury, and defendants adequately support the language used with decisions of the supreme and appellate courts of Indiana.

■ *Alleged privileged communication.* Elliott testified that the last thing he remembered before the collision was a stop he made some distance east.

Over plaintiff's objection (on the ground of privilege), defendants were permitted to introduce the testimony of Barbara Lynn, a psychologist, that at an interview Elliott had said something to the effect that he assumed responsibility for the accident and that he lost control of the vehicle he was driving and ran into a truck. A portion of her report of the interview, so stating, was read to the jury.

The court immediately instructed the jury that it would be the function of the jury to determine questions of responsibility and that the admission of the psychologist's report was not intended to decide questions which only the jury would decide.

Plaintiff relies in part on the portion of Sec. 2–1714, Burns' Ind.Stat. which makes physicians incompetent to testify as to matter communicated to them by patients in the course of their professional business. The collision and the trial occurred in Indiana. Plaintiff cites no authority, however, that "physician" in that statute includes "psychologist."

■ The interview occurred in Illinois, and it is suggested that the law of Illinois may apply. Plaintiff relies on Ill.Rev.Stat., ch. 51, sec. 5.2.[4]

Sec. 5.2 provides (condensing it to those terms which are material here) that in a civil case a patient has the privilege to prevent a witness from disclosing communications, relating to diagnosis or treatment of the patient's mental condition, between patient and a psychiatrist or persons under the supervision of a psychiatrist. Assuming the law of Illinois governs, Elliott could prevent Mrs. Lynn from disclosing his statements if they related to diagnosis of his mental condition by a psychiatrist under whose supervision she worked.

Mrs. Lynn is a psychologist employed by the Rehabilitation Institute of Chicago. This is a hospital which apparently specializes in helping disabled people overcome the problems imposed by their disabilities. Elliott was there for six months, learning to dress himself, take care of his bowel and urinary functions and be independent of his wheel chair. One of the staff doctors testified extensively as to his limitations and rehabilitation. Mrs. Lynn interviewed him shortly after arrival and made an evaluation, following a procedure employed with all patients. The purpose was "reducing morbidity in the grouping of people through their mental capacity." Although she indicated this was done "under a psychiatrist", we do not consider that plaintiff spelled out the type of relationship between plaintiff and Mrs. Lynn and the supervising psychiatrist which would establish a privilege under the provision of Illinois law relied on.

The district court admitted the evidence upon the basis that plaintiff had waived any privilege. Plaintiff's counsel had exhibited all the hospital reports, including Mrs. Lynn's, to defense counsel. This was done voluntarily before the pre-trial conference and not as part of any formal discovery. At the pre-trial conference copies were stipulated to be authentic. Defendants reserved the right to object to admissibility. Plaintiff made no reservation. Perhaps the admissions in the Lynn report were overlooked.

Under the circumstances it is doubtful if there was a real intent to waive any privilege, and it does not appear that the Lynn report was used in such fashion that

3. Rule 51, F.R.Civ.P.

4. He does not rely on ch. 91½, sec. 406.

it would be inequitable to retract a portion of it after seeking to use it to advantage. We base our decision on the proposition that no privilege was sufficiently established.

We note, also, our impression from the record that in finding contributory negligence, the jury probably decided that under the conditions described in the testimony, Elliott's failure to see the defendants' truck until an instant before the crash meant that he failed to keep a sufficient lookout, and we doubt that the jury gave weight to the rather vague statements reported by the psychologist.

The judgment and order are affirmed.