Steven L. ROSE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1281S358.

Supreme Court of Indiana.

March 24, 1983.

Richard L. Brown, Butler, Brown, Hahn & Little, P.C., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Steven L. Rose was found guilty by a jury in the Marion Superior Court of the crimes of murder and felony murder. He was subsequently sentenced to a term of fifty years on the felony murder conviction. Appellant now directly appeals and raises the following six issues:

1. sufficiency of the evidence;

2. whether the trial court erred by denying a Motion to suppress the testimony of Gale Nicholson, Appellant's former probation officer;

3. whether the trial court erred by declaring Jon Rose a hostile witness, by granting him immunity and by permitting his impeachment;

4. whether the trial court erred by admitting State's Exhibit 52, Appellant's driving license record;

5. whether the trial court erred by refusing to instruct the jury on certain lesser included offenses; and

6. whether the trial court erred by reconvening the jury during its deliberations.

On October 21, 1980, Clarence Keeley was the resident manager of an apartment building located at 6221 North College, Indianapolis, Indiana. He was found dead in his apartment, the result a gunshot wound to his head. A spent .32 caliber bullet was found in Keeley's mattress and a .32 caliber shell casing was found nearby. Witnesses placed Appellant with a .32 caliber pistol in the vicinity of Keeley's apartment on October 21. A check taken from Keeley and cashed on October 22 contained Appellant's driver's license number. This number had been given when said check was cashed. A handwriting expert determined that Appellant signed Keeley's check as well as a local motel's register. Appellant made certain incriminating admissions to Gale Nicholson, who was his probation officer at that time.

I

Appellant first challenges the sufficiency of the evidence supporting his murder conviction. His argument merely alleges certain conflicts in the evidence. Upon a sufficiency review, this Court will look only to the evidence most favorable to the State with all reasonable inferences drawn therefrom. If the existence of each element of the charged crime may be found therefrom beyond a reasonable doubt, the verdict will not be disturbed. We will not reweigh conflicting evidence nor judge the credibility of the witnesses. *Gross v. State*, (1983) Ind., 444 N.E.2d 296.

The evidence shows that on October 21, 1980, Appellant was let out of his brother's car near the Vogue Theater which is adjacent to the apartment building where Keeley was found dead. The following morning, Appellant called his brother and asked him to pick him up and take him to a bank to cash a check. When picked up, Appellant possessed a .32 caliber pistol and told his brother that he might have killed someone. Appellant's fingerprints were found in Keeley's apartment along with a spent .32 caliber bullet and casing. A handwriting expert testified that Appellant forged his name onto one of Keeley's checks, by which he received $120.00. The social security number on the check as well as on the registration card at a local motel was Appellant's Social Security and driver's license number. There was, accordingly, more than sufficient evidence for the jury to find or infer that Appellant committed this murder. *Turpin v. State*, (1982) Ind.,

435 N.E.2d 1, *Ashbaugh v. State,* (1980) Ind., 400 N.E.2d 767.

Appellant claims that the trial court's Instruction No. 10 ignored the State's burden to prove Appellant guilty beyond a reasonable doubt. Appellant does not, however, set out this Instruction nor any objections he made to it. He therefore waived this issue pursuant to Ind.R.App.P. 8.3(A)(7). Moreover, in examining all of the instructions, we find that the trial court properly instructed the jury on the State's burden of proof.

## II

Prior to trial and again during trial, Appellant moved to suppress certain incriminating statements made by him to Gale Nicholson. Gale Nicholson was Appellant's probation officer at the time of the charged offenses. The trial court held a hearing on each of Appellant's motions and denied them both. It is Appellant's contention that since Nicholson was an agent of the State and since she did not give Appellant any *Miranda* warnings before he talked to her, the trial court should have suppressed Appellant's statements to her. *See generally: Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Appellant is correct that Nicholson was an agent of the State. He is also correct that any statements made to her under any conditions akin to a custodial interrogation would require that they be preceded by the proper *Miranda* warnings and an acknowledgement that Appellant was waiving his rights as described in those warnings. The trial court found, however, that Appellant's statements to Nicholson were voluntary statements made in conversations he initiated under circumstances which did not amount to any custodial interrogation.

After being arrested, Appellant called Nicholson and requested that she come to the interrogation room where he was being held. When she arrived at said location, Appellant asked the attending police officers to leave. He then told Nicholson to call his father and to get an attorney for him. He also made certain admissions to her. On another occasion, Appellant called Nicholson at her home and told her that he had cashed Keeley's check to buy drugs and that he believed he had killed someone. Each time Appellant talked with Nicholson, she told him not to talk to her because she was duty bound to report whatever he said. She specifically told Appellant not to confide in her and not to talk to her about the facts of his charged crimes. Each time Appellant talked with Nicholson, Appellant requested the conversation and volunteered the information he gave.

This Court has held:

"It is settled that the procedural safeguards of *Miranda* only apply to what the United States Supreme Court has termed "custodial interrogation." *Oregon v. Mathiason* (1977) 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Bugg v. State* (1978), Ind. [267 Ind. 614], 372 N.E.2d 1156, 1158. Custodial interrogation refers to questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Mathiason, supra,* 429 U.S. at 494, 97 S.Ct. at 711, 50 L.Ed.2d at 719. The concept of custodial interrogation does not operate to extend the *Miranda* safeguards to spontaneous voluntary statements, i.e. statements which are either not made in response to questions posed by law enforcement officers while the defendant is in custody, *Bugg v. State, supra,* or statements which are made before the officers are given an opportunity to administer the *Miranda* warnings. *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696. Nor does *Miranda* apply to questioning by police in the course of a general, non-accusatory, investigation of a crime. *Miranda v. Arizona* (1966) 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694; *Stallings v. State,* (1970) 255 Ind. 365, 264 N.E.2d 618, 620."

*Johnson v. State,* (1978) 269 Ind. 370, 375, 380 N.E.2d 1236, 1240. *See also: Pitts v. State,* (1980) Ind.App., 410 N.E.2d 1387. We now again hold that the procedure dictated by *Miranda* applies only to a custodial

interrogation conducted by law enforcement officers. We accordingly find no error on this issue. The trial court properly overruled Appellant's motions to suppress.

### III

■ Jon Rose was one of Appellant's brothers. At the time of the instant offenses, Jon was in the United States Army and stationed at Fort Harrison in Indianapolis. During the evening of October 20, 1980, Jon was with Appellant and another brother, Kerry Rose. Jon let his brothers out of the car in the vicinity of the building in which Keeley was killed. The next day, Appellant phoned Jon and asked to be picked up and taken to a bank to cash a check. Jon picked Appellant up and dropped him off near a bank. At that time, Appellant displayed a .32 caliber Mauser gun and said that he might have killed someone. Jon told this story to Captain Tommy Haynes, his instructor at Fort Harrison. Jon subsequently told Homicide Detective Sergeant Robert Hoke that when he let Appellant out of the car on October 20, Appellant showed him a Mauser containing 8 bullets. When Appellant showed him the gun the next day, the gun held only 5 bullets. Jon also said that when he picked Appellant up on October 21, Appellant's shirt had a stain on it which appeared to be blood.

When Jon Rose was called by the State to testify against his brother, Jon claimed the Fifth Amendment privilege against testifying. The trial court thereupon granted the State's Motion to Compel. Duly compelled, Jon responded to several questions maintaining that he did not remember making any statements about seeing Appellant's gun or hearing Appellant's admissions. The trial court found Jon to be a hostile witness and accordingly permitted the State to ask him leading questions pursuant to Ind.R. Tr.P. 43(B). A trial judge's discretionary determination of the propriety of such questioning is reviewable only for clear error. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Clark v. State,* (1976) 265 Ind. 161, 352 N.E.2d 762. We find that the instant trial judge committed no such error under the particular circumstances of this case.

■ The trial court permitted Captain Haynes and Sergeant Hoke to impeach Jon Rose regarding the statements he made to them. Appellant now contends that the testimonies of these two witnesses were hearsay and therefore inadmissible. This Court has held:

"In the case before us, the use of the statements made by [Codefendant] James is justified for the purpose of impeaching James. James was in court, on the witness stand and under oath. The State brought forth the text of his statements only after he testified in a manner inconsistent with them, and therefore they were admissible in evidence under the *Patterson* rule as originally conceived. They were not therefore inadmissible as hearsay nor did their admission deny appellant the right of confrontation."

*Stone v. State,* (1978) 268 Ind. 672, 377 N.E.2d 1372; *see also: Balfour v. State,* (1981) Ind., 427 N.E.2d 1091; *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482. The instant trial court faced the same situation as that faced by the *Stone* trial court. We find the trial judge in Appellant's case to be correct for the reasons stated in *Stone.* The trial court acted properly in regard to this issue.

■ Appellant further complains that the trial court erred by granting Jon Rose immunity from any possible criminal prosecution by military authorities. The State relies upon *Murphy v. Waterfront Commission of New York Harbor,* (1964) 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, wherein the United States Supreme Court provided that the federal government was prohibited from utilizing any compelled testimony and its fruits after a state court had granted a witness immunity to compel his testimony. Appellant only baldly asserts that Jon Rose may have violated a military regulation which might make him subject to prosecution by military authorities. There is no showing that Jon Rose violated any specific military regulations. We find that the trial court's ruling granting Jon immunity does

not represent any error against Appellant which requires us to disturb said ruling.

## IV

■ Appellant next claims that the trial court improperly admitted into evidence State's Exhibit 52 which was an official record of Appellant's driver's license. Appellant specifically claims that Exhibit 52 was hearsay and that portions of it had been deleted. The only purpose of said Exhibit was to show Appellant's driver's license number which was also his social security number. This proof was relevant to show the identity of the number that appeared on the victim's fraudulently cashed check and on the local motel's guest register. This Exhibit was admissible as a public record pursuant to Ind.R.Tr.P. 44(A)(1) and this Court's holding in *Boone v. State,* (1978) 267 Ind. 493, 371 N.E.2d 708. The document was from the permanent files of the Indiana Bureau of Motor Vehicles and was duly attested to by the Commissioner thereof. The record of this case shows that Appellant's defense counsel specifically requested that certain deletions be made from said Exhibit before it was shown to the jury. The trial court accordingly complied. Appellant cannot now take advantage of the trial court's action which he invited, particularly since he does not indicate what was deleted and what significance the deletions might have had to the jury. We find no error on this issue.

## V

■ Appellant also claims that the trial court erred by not instructing the jury on the lesser included offenses of voluntary and involuntary manslaughter. Since Appellant did not tender any instructions to the trial judge on either voluntary or involuntary manslaughter, he has waived any error on this issue. *Begley v. State,* (1981) Ind., 416 N.E.2d 824; *Miller v. State,* (1978) 267 Ind. 635, 372 N.E.2d 1168.

## VI

■ Finally, Appellant claims that the trial judge erred by making certain statements to the jury during its deliberations. After having deliberated for some time, the jury sent a note to the trial judge requesting a clarification of the elements of Counts I and II as stated in the Information. Without objection from either of the parties, the trial judge told the jury that said elements were contained in the instructions which were read to them and which they had with them in the jury room. We find no prejudice to Appellant by this statement to the jury. We also find that Appellant waived any claim of error by failing to object at the proper time.

During subsequent deliberations, the jury sent a note to the trial judge asking for a clarification of Instructions 2 and 3. On this occasion, Appellant objected to the trial judge talking to the jury. The trial judge nonetheless instructed the jury as follows:

"THE COURT: I will instruct you that instructions number 2 and 3 as they are contained in the final instructions read to you and given to you to take [to] the jury room with you that instruction number 2 gives the charging instruction or document filed by the State of Indiana, which began this criminal prosecution. That instruction number 3 is that statute that defines the offense of murder. Does that answer the questions that you had concerning this and provide adequate clarification. I note that some of the jurors are nodding, others seemingly are consenting. Is that sufficient clarification for you to return and continue to deliberate."

We agree with the State that this statement by the trial judge merely informed the jury about the nature of Instructions 2 and 3 and did not deal with any substantive matter. Specifically, the trial judge did not discuss or otherwise draw attention to any issues suggesting Appellant's guilt or innocence or the trial judge's opinion of the case. We accordingly find no error. We note, however, that the best procedure in this situation would have been to reread all of the instructions given to the jury prior to its deliberation. *Lewis v. State,* (1981) Ind.,

424 N.E.2d 107. *Cf. Crowdus v. State,* (1982) Ind., 431 N.E.2d 796.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.