Darrell B. McNARY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 283S74.

Supreme Court of Indiana.

March 6, 1984.

Bradford P. Bauer, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Darrell B. McNary, was convicted by a jury of attempted robbery, a Class A felony, Ind.Code §§ 35–42–5–1 (Burns 1983 Supp.), 35–41–5–1 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a period of thirty-five years. He raises the following three issues in this direct appeal:

1. Whether the trial court erred by permitting one of the state's witnesses to testify about his comparison of shoe prints in the snow near defendant's house;

2. Whether the trial court erred in admitting into evidence a photograph of the victim depicting the nature of his injuries; and

3. Whether the verdict of the jury is supported by sufficient evidence and is not contrary to law.

A brief summary of the facts from the record shows that about 9:00 p.m. on February 18, 1982, the sixty-six year old victim, Henry Niedbala, heard noises on the front porch of his house. He looked out of a window and saw someone jump from a railing onto the porch. Niedbala then opened his back door to go to a neighbor for help and a black male pushed him back inside the house. The assailant hit him on the side of the head with a long object, which appeared to be a sawed-off shotgun and also struck him in the mouth with his fist. The assailant frisked Niedbala's pockets and began ransacking two dressers which were in the living room. He threatened to kill Niedbala if he didn't give him any money.

At this point, a police officer arrived and called Niedbala's name from the front porch. The assailant ran upstairs and apparently opened a bedroom window and jumped out. Niedbala later identified defendant as his assailant and explained that he was sure of his identification because defendant had approached him in his yard

on two prior occasions and asked for food or money. Other police officers outside Niedbala's house noticed footprints in the snow directly underneath the open bedroom window and started following them. The footprints led to a nearby residence and the officers knocked on the door of this house. They asked the woman who answered the door whether anyone had just entered her house. She responded that her son, the defendant, had just come in from shoveling snow.

Defendant was arrested and as he was getting ready to go with the police, his mother handed him a pair of wet, blue tennis shoes saying, "Put on your shoes." Defendant's jeans were wet from the knees down. Niedbala was brought over to defendant's house in a police car and identified defendant as the person who had assaulted him earlier that evening. The police made a further investigation of the footprints outside defendant's house. One of the officers had been trained in footprint comparison methods and testified that in his opinion the footprints leading to defendant's house and those made by defendant after his arrest were made by the same shoes. He stated that his opinion was based on a visual comparison of the footprints in which he noted the particular pattern of the shoe sole and the individual markings left by the bottom of the shoe, such as the places on the sole that were worn.

### I.

Defendant first contends that the trial court erred in allowing the shoe print comparison testimony because an insufficient foundation was laid and the testimony was irrelevant and misleading. He argues that no specific measurements of the footprints such as the depth or angle of the imprints were made. The officer testified that his sole basis of comparison was his visual comparison made at night with the aid of a flashlight and that further measurements were impossible due to the snow that was falling. The prints that were compared were outside defendant's house and no

comparison was made with the prints found by the victim's house.

Defendant further argues that there was no proof that he actually owned the blue tennis shoes he put on when he was arrested which were used as the basis of comparison with the footprints in the snow. The police officer testified that defendant was not wearing shoes when he was apprehended and that the officer did not know who owned the blue tennis shoes. Defendant presented evidence to show that his younger brother, Timothy Payne, had played basketball at a neighborhood center on the evening of the instant crime and was wearing some blue tennis shoes. Timothy had returned home shortly before the police arrived. At the trial, Timothy testified that the tennis shoes introduced by the state which defendant put on when he was apprehended were Timothy's shoes. Timothy's mother bought him a new pair of tennis shoes after the blue tennis shoes were confiscated and these new tennis shoes showed the same wear pattern on the sole as the old tennis shoes.

All of defendant's evidence on this issue was correctly presented to the jury to allow them to determine the weight and credibility to be given the footprint comparison. However, this evidence did not detract from the proper foundation given by the police officer to support his testimony. The correct standard for the admission of footprint comparisons was set out by the Court of Appeals in the following case, although the actual comparison testimony in that case was held to be erroneous.

"Evidence of the character of footprints found where the crime is discovered and of the similarity of those footprints to the shoes worn by the defendant is admissible to identify him as the guilty person.... For the reason that footprints are large and the points of similarity are obvious (contrasted with fingerprints or palm prints), expert testimony is not required and the comparison may properly be made a subject of non-expert testimony. A witness is generally allowed to give his opinion as to their similarity, *provided he bases his conclusion on measurements or peculiarities of the footprints.*" (Emphasis in original.)

*Johnson v. State,* (1978) 177 Ind.App. 501, 505, 380 N.E.2d 566, 569.

■ In this case, the police officer stated that he based his comparison of the footprints on the particular diamond pattern of the shoe sole and the individual markings on the sole showing where it was worn. He testified that he observed these specific markings in the footprints he saw in the snow near defendant's residence and that the same diamond pattern and wear markings were present on the sole of the blue tennis shoes and in the footprints which defendant made after he was arrested. While the officer did not take specific measurements, he did show that he based his comparison in this case on specific identifying characteristics thus laying a proper foundation. The footprints near defendant's house were clearly relevant since police officers had followed them from the scene of the crime to that location. There was no error in admitting the testimony about the officer's comparison of footprints.

## II.

■ Defendant next contends that the court erred in admitting into evidence a photograph of the victim depicting the nature of his injuries. He argues that the photograph served no purpose except to inflame the jury and prejudice them against him since the serious nature of the victim's wounds was not contested. However, the state also presented evidence to show that the victim's injuries did not impair his ability to identify defendant shortly after the crime occurred. Therefore, the photograph was clearly relevant to aid the jury in assessing the extent of the victim's wounds.

■ It is axiomatic that the admission of photographs into evidence is within the sound discretion of the trial court and reversal will be granted only upon a showing of abuse of that discretion. The fact that

photographs are of a gruesome nature is not sufficient ground in itself to justify their exclusion as long as the evidence is material and relevant. Relevancy of a photograph is determined by an inquiry as to whether a witness would be permitted to describe the objects or scenes in the photograph. *Harden v. State*, (1982) Ind., 441 N.E.2d 215; *Clemons v. State*, (1981) Ind., 424 N.E.2d 113; *Rogers v. State*, (1979) 270 Ind. 189, 383 N.E.2d 1035. Here, the police officer who took the photograph testified that the photograph accurately portrayed the victim's wounds shortly after the crime. The photograph was relevant to the issues and was not unduly gruesome. There was no error in the admission of the photograph.

### III.

Defendant finally contends that there was not sufficient evidence on the issue of his identity as the perpetrator of the instant crime to sustain the verdict. He argues that the victim gave varying descriptions of the clothes worn by his assailant and two different estimates of his age. He further argues that the victim was in a nervous and dazed condition when he identified defendant shortly after the crime and that therefore his identification was unreliable.

■ Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Tunstall v. State*, (1983) Ind., 451 N.E.2d 1077; *Fielden v. State*, (1982) Ind., 437 N.E.2d 986; *Wofford v. State*, (1979) 271 Ind. 518; 394 N.E.2d 100. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely upon circumstantial evidence. *Thompson v. State*, (1982) Ind., 441 N.E.2d 192.

■ In this case, the victim positively identified defendant at the trial as his assailant. He testified that he recognized the way defendant talked and looked because defendant had approached him in his backyard during the previous summer and asked for food and money. He stated that defendant had an obvious speech impediment and that he noticed that his assailant during the instant crime had a similar speech impediment. He also admitted that he had told police it was difficult for him to describe his assailant's face. The jury was fully informed about the discrepancies in the identification testimony and defendant's theory that his brother may have been the person who left the footprints in the snow outside the defendant's house. The jury was able to judge the demeanor of the witnesses. The victim's identification of defendant as his assailant was based upon specific physical characteristics and was corroborated to some extent by the circumstantial evidence. In light of the standard of review incumbent upon us, defendant's argument that the victim's identification was not credible must fail. There was sufficient evidence to sustain the verdict of the jury. *Gatewood v. State*, (1982) Ind., 430 N.E.2d 781.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.