Ronald K. WHITEHEAD, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 485S142.

Supreme Court of Indiana.

July 22, 1987.

Timothy S. Brennan, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Ronald K. Whitehead, was convicted by a LaGrange County jury of the crime of murder. The trial court sentenced him to fifty-four (54) years. In this direct appeal, Appellant raises the following issues for our review:

1. error in waiving Appellant to adult criminal court;
2. error in selecting counties for a change of venue which were subject to the same pre-trial publicity as the county this cause was venued from;
3. error in allowing a second trial after the first ended in a mistrial;
4. error in imposing time limitations on *voir dire* and final argument;
5. error in attempting to rehabilitate prospective jurors in the presence of the other prospective jurors;
6. error in refusing to suppress statements made at the scene of the crime and after being placed in custody;
7. error in admitting testimony of statements Appellant made to a psychologist;
8. error in admitting testimony concerning a footprint comparison;
9. error in allowing two assistants to sit at the prosecutor's table;
10. error in admitting photographs of the victim's injuries;
11. error in failing to admonish the jury prior to each and every recess;
12. error in refusing to give Appellant's tendered instructions on the lesser included offenses of murder;
13. error in sentencing Appellant to fifty-four (54) years for murder; and
14. error in imposing a fine and ordering restitution.

The facts supporting Appellant's conviction are as follows. On the evening of December 15, 1980, Appellant was working as a janitor at the South Bend Tribune office in Mishawaka, Indiana. The victim, a reporter for the Tribune, was working late at the office that evening.

At approximately 8:26 p.m., Appellant phoned the Mishawaka Police Department, and reported that someone had been murdered at the Tribune office. Officer Whitfield arrived at the office and knocked on the door. Appellant unlocked the door from the inside with a key, and pointed to the victim's body. The victim's body was lying on the floor in a pool of blood. An electrical cord was wrapped around her neck. Appellant's clothes were covered with blood, he was limping and breathing heavily, and his hair was matted down with perspiration.

Whitfield asked Appellant what happened and Appellant explained that he was in the basement when he heard a female voice scream "murder." Appellant ran upstairs to find a black male standing over the victim's body. Appellant stated he tried to assist the victim, but was knocked unconscious by the assailant.

The police investigating the scene found blood and hair on the walls of the circulation room. The victim's body had been dragged away from the south door of the room into the hallway. A trail of blood led to the basement where police found a steel rod covered with blood inside a plastic trash can. There were a number of bloody tennis shoe footprints that appeared to match the shoes Appellant was wearing.

Appellant's hat was found underneath the victim's left foot. No other footprints were found either inside or outside the building, and there was no sign of a forced entry into the building. Another employee of the Tribune told the police that when she left the building at 7:00 p.m. that evening, she locked the south door of the office, and that Appellant and the victim were the only two in that part of the building.

At trial, Appellant testified in his own behalf and elaborated on the version of events he had originally told the police. He explained that after he regained consciousness, the black man was standing on his ankle, threatening to kill him. Appellant stated the victim pleaded for Appellant's life. When the black man left, Appellant attempted to help the victim, but slipped on her blood and fell forward onto the victim's body. He then tried to remove the cord around her neck. He stated he removed his shirt to try to stop the victim's bleeding. Appellant claims he went to the basement to get a wet rag, and took the steel rod with him to hide in the trash can. Appellant explained he hid the rod because he was afraid the assailant would return and use the weapon to finish him off. Appellant then called the police.

## I

Appellant makes two allegations of error concerning his being waived from the jurisdiction of the juvenile court. The statute in question reads as follows:

(c) Upon motion of the prosecutor and after full investigation and hearing, the juvenile court shall waive jurisdiction if it finds that:

(1) The child is charged with an act that would be murder if committed by an adult;

(2) There is probable cause to believe that the child has committed the act; and

(3) The child was ten (10) years of age or older when the act charged was allegedly committed; unless it would be in the best interests of the child and of the safety and welfare of the community for him to remain within the juvenile justice system.

Ind.Code Ann. § 31-6-2-4(c) (Burns Supp. 1986).

First, Appellant claims the juvenile court erred in finding sufficient probable cause to believe that he committed this crime. At the waiver hearing, Officer Whitfield testified that he was the first to arrive at the scene of the murder. There, he found Appellant, who was limping, breathing heavily, and covered with blood. The victim's body was on the floor in a large pool of blood. An electrical cord was wrapped around her neck and there were signs of a struggle. Appellant's black cap was found underneath the victim's left foot. Footprints in the blood appeared to match the shoes Appellant was wearing. Appellant's glasses were broken and had blood on them. A trail of blood led down to the basement where the police found a bloody steel rod hidden in a trash can.

Others testified that Appellant was the last person seen with the victim at the office immediately before it was locked up that night. There was no sign of a forced entry into the office. FBI laboratory findings indicated that strands of the victim's hair were present on Appellant's pants, shirt, and shoes, as well as the metal rod found in the basement. The juvenile court found the State not only proved the existence of probable cause, they proved it beyond a reasonable doubt.

■■■ Probable cause exists when the facts and circumstances, if based on reasonably trustworthy information, would lead a man of reasonable caution and prudence in believing that the accused committed the criminal offense. *Ross v. State* (1980), 274 Ind. 588, 591, 413 N.E.2d 252, 255; *Gaddis v. State* (1977), 267 Ind. 100, 368 N.E.2d 244. Based on our review of the waiver hearing transcript, we find there was sufficient evidence presented to the juvenile court for it to conclude there was probable cause to believe Appellant committed this crime.

Second, Appellant claims the juvenile court erred in finding his waiver from the juvenile court would be in his best inter-

ests, and the best interests of the community's safety and welfare.

■ The issue of waiver of jurisdiction from the juvenile system is one committed to the sound discretion of the juvenile court, and we will reverse its determination only if the court abused its discretion. *Gerrick v. State* (1983), Ind., 451 N.E.2d 327, 330. Under Ind.Code § 31–6–2–4(c) (Burns 1980), a presumption exists in favor of waiving the juvenile to adult court. *Gerrick*, 451 N.E.2d at 330; *Trotter v. State* (1981), Ind., 429 N.E.2d 637.

■ Here, the juvenile court found that committing Appellant to a juvenile correctional institution would not give sufficient time to rehabilitate and treat Appellant's paranoia. Given this finding, and taking into consideration the seriousness of this crime, and the presumption in favor of waiver, we find the juvenile court properly waived its jurisdiction over Appellant to the adult criminal court.

## II

On March 2, 1984, Appellant's motion for a change of venue from St. Joseph County was granted. The court submitted a panel of the following counties: Porter, Jasper, Whitley, and La Grange. After Whitley County and Porter County were eliminated, Appellant filed a motion for a substitute county. He alleged Jasper County was as contaminated by the pre-trial publicity as St. Joseph County. The court denied his motion. Appellant then struck Jasper County, and this cause was venued to La-Grange County.

■ Appellant claims the court abused its discretion in selecting counties which had a similar bias against him. Specifically, Appellant claims Jasper County was biased against him. However, Appellant was not tried in Jasper County. He was tried in LaGrange County. Appellant did not request a change of venue from La-Grange County. The record is void of any objection to this cause being tried there. The defendant bears the burden of showing that community bias or prejudice exists which would prevent him from obtaining a

fair trial in the county. *Underhill v. State* (1981), Ind., 428 N.E.2d 759, 763. Here, Appellant has failed to carry his burden. He has failed to show us that Jasper County held the same bias against him as St. Joseph County. Further, aside from the fact that LaGrange County received a fair amount of publicity, Appellant has not demonstrated that the jurors in LaGrange County were unable to set aside any preconceived notions about Appellant's guilt or innocence. *See McKean v. State* (1986), Ind., 500 N.E.2d 1184, 1187. We find no error here.

## III

■ Appellant's original trial began on February 3, 1982. A jury was selected, preliminary instructions were given, and both sides presented opening statements. The State then presented its first witness.

Over the noon hour recess, the court realized it had not sworn the jury. Appellant moved for a mistrial. The court felt that Appellant had not been prejudiced by this and denied the motion. Appellant offered the court case law on issue and the court stated it would reconsider its ruling after reviewing Appellant's authority that evening. The court then indicated it would swear the jury and pick up where the trial left off. Appellant objected to the court's retroactive swearing of the jury, but the court overruled this objection.

The court swore the jury and informed the jurors the oath was retroactive to the beginning of the trial. The State then continued with its case. After more testimony was given, the prosecutor informed the court he had no objection to a mistrial. The court granted a mistrial and dismissed the jury. Appellant did not object to having a mistrial granted but stated:

"**MR. D. BRENNAN:** Judge, we do feel that it is fundamental error and would require a discharge. I think that there will be some filings at a later time regarding that."

Subsequently, the Judge disqualified himself and a new judge was selected. Appellant filed a motion to discharge based on his constitutional right not to be placed in

jeopardy twice for the same offense. Appellant's motion was denied and he filed an interlocutory appeal. The Indiana Court of Appeals held Appellant's double jeopardy rights were not violated. *See Whitehead v. State* (1983), Ind.App., 444 N.E.2d 1253. Appellant's petition to transfer to this Court was denied. Appellant also filed a petition for a writ of *habeas corpus* in federal court. That petition also was denied. *Whitehead v. Richardson* (N.D.Ind. 1984), 580 F.Supp. 44.

Appellant again claims his constitutional right not to be placed in jeopardy twice for the same crime was violated. We disagree.

A defendant's motion for a mistrial, if granted, removes any barrier to reprosecution. *United States v. Jorn* (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543; *Cabell v. State* (1978), 267 Ind. 664, 372 N.E.2d 1176. In *Jorn,* the Supreme Court held:

> "Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

*Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556. In *United States v. Dinitz* (1976), 424 U.S. 600, 609–11, 96 S.Ct. 1075, 1080–81, 47 L.Ed.2d 267, 275–76, on remand, 538 F.2d 1214 (5th Cir.), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977), the Supreme Court held:

> "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.

> \*    \*    \*·    \*    \*    \*

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' United States v. Jorn, supra,

at 485, 27 L.Ed2d 543, 91 S Ct 547 threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. [citations omitted]."

Finally, in a case very similar to this, the Supreme Court held:

> "Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally would not stand in the way of reprosecution. Only if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice,' would there be any barrier to retrial...."

*Lee v. United States* (1977), 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80, 89.

Here, Appellant moved for a mistrial when it was discovered the jury had not been sworn. His motion was denied subject to the court's reconsideration of the issue. When the court granted the mistrial, Appellant neither objected nor tried to withdraw his motion. Further, he did not object to the jury being discharged. There was no bad-faith conduct on the part of the judge or the prosecutor. By asking for a mistrial, Appellant exercised his choice in favor of terminating the trial. We conclude, as did the Court of Appeals and the Federal District Court, that Appellant asked for and consented to a mistrial. Therefore, his double jeopardy argument must fail.

## IV

Next, Appellant claims the trial court abused its discretion by imposing time limits on both *voir dire* and closing argument.

The trial court conducted the initial *voir dire* by questioning panels of either four or six prospective jurors. The parties were each given a total of twenty-five (25) minutes to ask their questions. Appellant claims the trial court did not adequately question many of the prospective jurors. Because of this, he claims he had to use valuable time to conduct a meaningful in-

quiry into whether potential jurors had already formulated an opinion as to Appellant's guilt or innocence.

The trial court is given broad discretionary power to regulate the form and substance of *voir dire*. *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 747; *McCormick v. State* (1982), Ind., 437 N.E.2d 993, 996. We have held that a twenty minute limitation on *voir dire*, even in a murder case, does not amount to an abuse of the trial court's discretion. *Wickliffe v. State* (1981), Ind., 424 N.E.2d 1007, 1008; *Lynn v. State* (1979), 271 Ind. 297, 298, 392 N.E.2d 449, 451.

Our review of the record indicates the trial court did a very thorough job of questioning the prospective jurors. While many of the prospective jurors had heard of this case, many had not. Most said they could set aside what they had heard about the case, and could decide the case based on the evidence. Those who could not were dismissed. At one point, defense counsel elected to ask no questions of one of the juror panels. Appellant has failed to show us anything that would indicate he was prejudiced by the time limits imposed on *voir dire* examination.

The trial court initially allotted each side forty-five (45) minutes for closing argument. Appellant suggested he would need more time, so the trial court granted each side one hour and fifteen minutes. Appellant did not object to this time limitation, but now claims the trial court abused its discretion in setting this time limit on closing argument.

The amount of time allotted for closing argument is within the sound discretion of the trial court. *Hashfield v. State* (1965), 247 Ind. 95, 110, 210 N.E.2d 429, 438. In order to show an abuse of discretion, the defendant must object to the time limitation, and must show us the manner in which he was prejudiced by the limitation. *Barnes v. State* (1978), 269 Ind. 76, 378 N.E.2d 839, 844. Appellant here has done neither.

This case lasted seven days, and included testimony from thirty-seven witnesses. Appellant claims he was not able to completely summarize the testimony of two of the key witnesses. Appellant has not shown us that he could not present his argument in the time allotted. His inability to summarize some of the witness' testimony was more the result of poor planning than of the time limitation imposed by the trial court. We find no prejudice to Appellant and no abuse of the trial court's discretion.

## V

During *voir dire*, the trial judge questioned three prospective jurors who indicated they had already formed an opinion concerning Appellant's guilt or innocence. Appellant claims this attempt to rehabilitate these jurors influenced the rest of the prospective jurors, and they in turn gave answers they thought would meet with the judge's approval. Appellant argues this prevented him from conducting a meaningful *voir dire* of the prospective jurors.

While the trial judge has broad discretionary power to regulate the form and substance of *voir dire*, *Zachary*, 469 N.E.2d at 747, the judge also has a duty to remain impartial and to refrain from making unnecessary comments or remarks. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 498. In *Brannum v. State* (1977), 267 Ind. 51, 366 N.E.2d 1180, we found the trial judge improperly interjected himself into the *voir dire* examination by assuming the role of an advocate and challenging one of the juror's answers. *Id.* at 52, 366 N.E.2d at 1182. Such was not the case here. The trial judge here thoroughly questioned the three prospective jurors who indicated they had already formed an opinion in this case. He remained completely impartial during his questioning. He did not attempt to persuade any of the three to change their opinion as did the judge in *Brannum*. Rather, he tried to determine whether they could set their opinion aside and judge the case on the evidence. We note that none of the three expressed their opinion to the other prospective jurors. They merely indicated they had formed an opinion based on

the pre-trial publicity. Further, none of these three were chosen as jurors.

We conclude that the trial judge remained impartial. His questioning of the jurors was to insure that a fair and impartial jury was selected to hear Appellant's case. Appellant's claim that other potential jurors were influenced by the judge's questioning is speculative at best, and certainly insufficient to demonstrate an abuse of the trial court's discretion.

## VI

Next, Appellant claims the trial court erred by refusing to suppress statements he made at the scene of the crime, and after being placed in custody.

Appellant was first questioned by police at the scene of the crime. Appellant claimed he was an eye witness to the murder, and gave the police a description of the attacker. He also told the police the attacker beat him, and he explained how his clothes became covered with blood during the struggle. At trial, several police officers testified about what Appellant told them at the scene of the crime. Appellant now claims this on the scene questioning violated his *Miranda* rights because the police "knew or should have known" he was a suspect in this crime. We disagree.

*Miranda* warnings do not need to be given when the person questioned has not been placed in custody. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128, 1130; *Hatcher v. State* (1980), Ind., 274 Ind. 230, 231, 410 N.E.2d 1187, 1188. Here, Appellant made these statements to the investigating police officers before he was a suspect in this crime, and before he was taken into custody. There is no *Miranda* violation here. Further, Appellant did not object to any of the officers' testimony during the trial. His failure to object waives any error on appeal. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 910.

After the police investigation, Appellant was taken to the hospital for an injured ankle. Appellant's parents were notified and met with the deputy prosecutor at the hospital. The police indicated Appellant was considered a suspect, and they wanted to continue questioning Appellant at the police station.

At the station, Appellant and his parents were read the *Miranda* rights. Appellant signed a waiver of rights form, and began to give the police a statement. Appellant was informed that regardless of what he told the police, he was going to be held in connection with this crime. Appellant and his parents conferred and decided he should not continue giving the police a statement.

Several days later, Appellant was in custody at the Parkville Juvenile Center. Kevin Lockhart, a youth care worker, testified that he was monitoring the other boys at the center when he heard Appellant moaning and muttering over the intercom. Appellant knocked on his door and asked to use the restroom. Lockhart escorted Appellant to the restroom. On the way back, Lockhart testified Appellant said, "Why didn't he stop, why didn't he stop me?" Lockhart responded, "Stop you from what?" Lockhart testified Appellant answered, "Stop me from killing her. Why didn't he stop me?" Lockhart further testified he was not aware if Appellant was on medication at this time, but did describe Appellant as being groggy and tired.

Appellant now claims he was subjected to custodial interrogation in violation of his *Miranda* rights, and that his statement to Kevin Lockhart was involuntary because Appellant was under the influence of medication.

The requirements of *Miranda* do not apply except during coercive custodial interrogation. *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1335. In *Rose v. State* (1983), Ind., 446 N.E.2d 598, we held *Miranda* safeguards apply only to custodial interrogation conducted by law enforcement officers. *Id.* 446 N.E.2d at 600–01. While Appellant was in custody at the time he made these statements, his statements were in no way the result of a police initiated interrogation.

There is no evidence that Kevin Lockhart was a law enforcement officer or

had any responsibility for the investigation of this crime. He was merely a youth care worker at the juvenile center. Appellant initiated the conversation with Lockhart, and Lockhart responded as anyone might. Lockhart's response certainly was not an attempt to induce Appellant into making incriminating statements. Since there was no interrogation, there was no occasion for the application of the *Miranda* safeguards. *See Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103.

■■■■■ Appellant also contends that his statements to Lockhart were involuntary because he was under the influence of medication at the time. In determining whether a statement is voluntarily given, we consider all the surrounding circumstances. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197, 1199. When a defendant claims he was under the influence of drugs at the time he made a statement, the degree of his mental impairment is of critical importance. *Id.* If the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered on appeal. *Williams v. State* (1986), Ind., 489 N.E.2d 53, 56. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Id.*

■■■■ Here, Kevin Lockhart testified Appellant did not appear to be on medication at the time, but did act groggy and tired. In the context here, it is more of a matter of the weight to given the evidence rather than its admissibility. Appellant was able to walk and use the restroom without assistance. The only support for Appellant's assertion that he was under the influence of medication is his own testimony of what medication he remembered taking at the time. We conclude that there was substantial evidence to support the finding that Appellant's statements were voluntary, and not the product of interrogation or drug use.

## VII

Appellant alleges the trial court erred by allowing Dr. Sheehan, a psychologist, to testify as to statements Appellant made while in custody. Appellant claims these statements were privileged communications.

Dr. Sheehan testified he met with Appellant on seven different occasions while Appellant was being held at the Parkview Detention Center. Appellant first told Dr. Sheehan that three individuals committed this murder. This was contrary to what Appellant told the police. Appellant also told Dr. Sheehan he was not certain of the identity of the three individuals. At a later meeting, Appellant changed his story again, telling Dr. Sheehan he knew the individuals who murdered the victim, and had gone to school with them.

Ind.Code Ann. § 25–33–1–17 (Burns Supp.1986) provides:

A psychologist certified under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances:

(1) Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide.

Clearly, Appellant's communication with Dr. Sheehan falls within section (1) of this statute.

Appellant, however, argues the statute is an unconstitutional infringement upon his right to privacy, and that it violates equal protection guarantees because it strips him of a privilege he would have had but for the charge of murder.

■■■■■ First, Appellant has waived any error here. Appellant does not cite any authority to support his argument. His cite to *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and nothing more, in no way supports his contention that Ind.Code § 25–33–1–17 infringes on his constitutional right to privacy. Failure to support an argument with legal authority waives our consideration of the issue on appeal. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1101. Further, Appellant does not put forth a cogent argument supporting his constitutional challenge to this statute. Failure to present a cogent argu-

ment on an issue acts as a waiver of the issue. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 89, *cert. denied,* — U.S. —, 106 S.Ct. 1241, 89 L.Ed.2d 349.

■ We note however, that under our common law, no physician-patient privilege existed. *Stayner v. Nye* (1949), 227 Ind. 231, 236, 85 N.E.2d 496, 498; *Myers v. State* (1922), 192 Ind. 592, 137 N.E. 547. The privilege is one of statutory law. *See* Ind.Code § 34-1-14-5 (Burns Ann.1986). Under our law, a psychologist is not considered a "physician" within the meaning of physician-patient privilege. *Elliott v. Watkins Trucking* (7th Cir., 1969), 406 F.2d 90, 93. Thus, by enacting Ind.Code § 25-33-1-17, the Legislature has extended the privilege to cover confidences made to certified psychologists. It was entirely within the Legislature's prerogative to eliminate the privilege under certain circumstances, such as those listed in the statute. Further, the purpose of an evidentiary privilege is not to suppress the truth, but to promote and protect certain types of confidences. *Stayner,* 227 Ind. at 237, 85 N.E.2d at 499. Evidently, the Legislature saw fit to deny any privilege in cases of homicide.

### VIII

■ Next, Appellant claims the trial court erred in admitting non-expert opinion testimony regarding a footprint comparison. Appellant argues no foundation was laid for the opinion testimony.

Officer Powell testified that, while at the scene of the murder, he observed tennis shoe footprints in the blood on the floor around the victim's body. Paramedics were treating Appellant for an injured ankle at this time. Officer Powell compared the sole of Appellant's shoe with the shoe prints in the blood. He testified they appeared identical. Officer Powell was then cross-examined on the reliability of his observations. This included the admission into evidence of an F.B.I. report which found that no conclusion could be made as to whether Appellant's shoe made the footprints in the blood.

In *McNary v. State* (1984), Ind., 460 N.E.2d 145, we held a non-expert may give opinion testimony concerning a footprint comparison when the comparison is based on specific identifying characteristics. *Id.* at 147. Appellant failed to object to the foundation concerning Officer Powell's testimony. Thus, the issue is waived because it was never brought to the trial court's attention. *See Phelan v. State* (1980), 273 Ind. 542, 546, 406 N.E.2d 237, 239. Had Appellant objected to the foundation, the State would then have had an opportunity to present the specific identifying characteristics between the footprints and Appellant's shoe. Further, since the jury was presented with the conflicting evidence contained in the F.B.I. report, they were in the best position to determine the weight and credibility to be given to Officer Powell's testimony. *See McNary,* 460 N.E.2d at 147; *Hartlerode v. State* (1984), Ind., 470 N.E.2d 716, 718. There is no error here.

### IX

Appellant claims the trial court erred by permitting two non-attorney assistants, a police detective and a paralegal, to sit at the prosecutor's table and assist him in conducting this trial.

■ The manner in which a trial is conducted, including the persons permitted to remain in the court room, is a matter within the discretion of the trial court. *Brown v. State* (1971), 256 Ind. 444, 445, 269 N.E.2d 377, 378. Appellant has shown no abuse of discretion. His claim that the presence of these assistants gave the State an unfair advantage, and afforded the police officers' testimony more credence, is pure speculation. Appellant's trial was a cumbersome one which included the testimony of thirty-seven witnesses and the introduction of over 100 items of evidence. The assistants' presence at the prosecutor's table aided in the orderly presentation of the evidence. Appellant has failed to show how his right to a fair trial was prejudiced by the assistants' presence. *See Wagner v. State* (1985), Ind., 474 N.E.2d 476, 486.

## X

The State introduced six photographs depicting the victim's wounds. These exhibits were used in conjunction with the testimony of Dr. Hoover, a pathologist, who described the nature and extent of the wounds. Appellant claims these photographs were irrelevant, and served only to outrage the jury.

Exhibit 75 showed the back of the victim's head. Exhibit 76 showed the victim's face and neck. The face was covered with blood and an electrical cord was wrapped around the victim's neck. Exhibits 78 and 81 showed lacerations on the back of the left and right hands. Exhibit 79 showed the body prior to the autopsy. Exhibit 80 showed the face and neck with the blood and electrical cord removed.

The admission of photographs depicting a victim's wounds and injuries is within the trial court's discretion. *McNary*, 460 N.E.2d at 147. Relevant evidence, that which logically tends to prove a material fact, is not inadmissible simply because it is gruesome. *Chittenden v. State* (1982), Ind., 436 N.E.2d 86, 87. However, where the relevancy and materiality of a photograph is minimal, and the prejudice to the defense is great, the photograph should not be admitted. *Id.*

While the photographs here were gruesome, we cannot say this outweighed their relevancy. The photographs illustrated the pathologist's testimony, and aided the jury in assessing how this crime was committed. Further, there is no evidence of a scheme on the part of the State to arouse or inflame the jury beyond the value of what the pictures actually depicted. *See Horne v. State* (1983), Ind., 445 N.E.2d 976, 980. We find the trial court did not abuse its discretion by allowing these photographs into evidence.

## XI

Next, Appellant claims the trial court failed to admonish the jury prior to each and every recess. Appellant points to several instances where the trial court granted a recess without fully admonishing the jury to not discuss the evidence. However, our review of the record indicates the trial court admonished the jury the vast majority of the time. Appellant concedes he cannot point to any jurors who might have disregarded the trial court's numerous admonishments. Thus, his allegation of prejudice is speculative at best. Further, Appellant did not object nor request a more thorough admonishment on any of these occasions. It is presumed the jury followed the trial court's admonishments. *Roberts v. State* (1978), 268 Ind. 127, 131, 373 N.E.2d 1103, 1106. Appellant could have asked to have the jury polled to determine whether any of the jurors had discussed the case among themselves during the recess. *See Choate v. State* (1984), Ind., 462 N.E.2d 1037, 1046. There is no error here.

## XII

Appellant tendered final instructions on the lesser included offenses of murder, i.e., voluntary manslaughter, involuntary manslaughter, reckless homicide, and battery. The trial court refused to give any of these instructions.

When determining whether an instruction was properly refused, this Court considers whether the tendered instruction correctly states the law, whether there was evidence adduced to support giving the instruction, and whether the substance of the tendered instruction was covered by other instructions which were given. *Smith v. State* (1985), Ind., 477 N.E.2d 857, 863.

In this case, the sole factual dispute was the identity of the perpetrator. Appellant maintained someone else committed this murder. The evidence did not warrant submission of these instructions on the lesser included offenses of murder. *See Scrivener v. State* (1982), Ind., 441 N.E.2d 954, 955 (alibi defense did not warrant instructions on lesser included offenses).

Here there was no evidence of sudden heat of passion, thus precluding any instruction on voluntary manslaughter. This crime was so brutal, it virtually precluded

any instruction including "recklessness" as an element. The same holds for battery. The trial court properly refused Appellant's tendered instructions because there was no evidence to support them. *Scrivener*, 441 N.E.2d at 955.

## XIII

Appellant argues the trial court erred by sentencing him to fifty-four (54) years imprisonment, fourteen (14) years more than the presumptive sentence of forty (40) years for murder.

We will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender for which the sentence was imposed. *Freed v. State* (1985), Ind., 480 N.E.2d 929, 931; Ind.R. App.Rev.Sen. 2. However, when a sentence deviates from the presumptive sentence authorized by statute, the sentencing judge must set forth particularized findings supporting any aggravating or mitigating circumstances as an explanation in satisfaction of the duty owed to the defendant and the community, and for the purpose of facilitating appellate review. *Wilson v. State* (1984), Ind., 458 N.E.2d 654, 655.

Here, the trial court listed the following aggravating circumstances. The court found there was a risk Appellant might commit another crime. This was based on the testimony of Dr. Sheehan and the findings of Dr. Kauffman. Both doctors felt Appellant needed long term mental health counseling. The court found this crime to be particularly "gruesome." The victim was hit ten or fifteen times, certainly enough time for Appellant to stop. The court found that the strangulation with an electrical cord was an afterthought. The court stated Appellant needed corrective rehabilitative treatment best provided by commitment to a penal institution, and that a reduced sentence would depreciate the seriousness of the crime. The court also found no excuse or provocation which would justify Appellant's attack on a woman five months pregnant. As mitigating circumstances, the court found Appellant had good character prior to this crime, and appeared to have respect for his pets. Even though this offense was inconsistent with Appellant's past life history, the court thought such an act was likely to recur.

Our review of the court's sentencing statement indicates the court took into consideration all of the applicable aggravating and mitigating circumstances. It is within the trial court's authority to determine the weight to be given to the aggravating and mitigating circumstances in each case, and to increase or decrease the sentence accordingly. *Vanyo v. State* (1983), Ind., 450 N.E.2d 524, 527. We are of the opinion that given the nature of this crime, and the findings expressed by the trial court, Appellant's sentence was not manifestly unreasonable.

## XIV

Finally, Appellant claims the trial court erred in ordering him to pay a $1,000 fine, and $4,418.32 in restitution to the victim's family.

Concerning the fine, Ind.Code Ann. § 35-50-2-3 (Burns 1985) allows the court to impose a fine of up to $10,000. However, Ind.Code Ann. § 35-38-1-18(a) (Burns Supp.1986) provides that when the court imposes a fine on a defendant, it must conduct a hearing to determine if the defendant is indigent. Here, the trial court was aware of Appellant's indigency because it appointed pauper appellate counsel. The State concedes that when a fine is imposed upon an indigent, the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the fine. *See Fry v. State* (1983), Ind., 447 N.E.2d 569, 573. We agree.

Concerning the court ordered restitution, the State concedes the statute in force at the time this crime was committed, Ind. Code Ann. § 35-4.1-4-7 (Burns 1981), does not authorize a judge to order restitution. *Barnett v. State* (1981), Ind.App. 414

N.E.2d 965, 966. In 1983, the Legislature enacted Ind.Code § 35–50–5–3, which allows the trial court to order restitution. However, since this was not law at the time of this offense, the trial court erred in imposing restitution. *See Beavers v. State* (1984), Ind., 465 N.E.2d 1388, 1390.

Therefore, this cause is remanded to the trial court for the purpose of vacating the restitution order, and to add language indicating Appellant shall not be imprisoned for failing to pay the court ordered fine. In all other respects, the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, and GIVAN, JJ., concur.

DICKSON, J., dissents as to *voir dire* time limits imposed, but concurs in all other issues.