**Ralph Richard McWHERTER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 66S00–8905–CR–362.**

Supreme Court of Indiana.

April 23, 1991.

Daniel S. Tankersley, Winamac, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of fifty-five (55) years.

The facts are: On June 5, 1988, appellant, who had been living in Florida with his parents, arrived at his grandmother's home in Pulaski County, Indiana. Appellant and his grandmother visited appellant's uncle, John McWherter, later that day. The grandmother told the uncle that she would not allow appellant to drive her vehicles and that she wanted appellant to find a job.

On the evening of June 7, 1988, a vacuum cleaner repairman called on the grandmother at her home in order to service a vacuum. While he was there, appellant appeared to be cleaning a gun. The repairman left at approximately 10:00 p.m. On June 10, 1988, John McWherter received word that the grandmother had not appeared at work and he asked a granddaughter-in-law, Deb McWherter, to check on her. Accompanied by two police officers, Deb McWherter drove to the grandmother's home. Upon arrival, they found the guest bedroom of the home in disarray. They saw an open suitcase and men's clothing scattered around the room. The grandmother's opened purse was discovered in that room. The officers then discovered the grandmother's body in her bedroom.

State police videotaped the crime scene. An autopsy was performed and it was found that the victim had died of a single gunshot wound. The bullet had passed through her chest in an upward direction, through her left arm, and lodged in the

bed. Police received word that appellant was at a bait shop. Appellant called the Sheriff's Department ostensibly to determine whether he was wanted for a probation violation in Florida. Officers drove to the bait shop and conversed with appellant. He told them that he had just arrived from Florida that day. He further stated he had no relatives in the area and that he had come to visit a friend whom he had not seen yet.

Upon further questioning, he admitted that he had seen his friend, Vaughn Toble, and that he did have an uncle and a grandmother who lived in the area. He claimed he had not seen either his uncle or his grandmother as yet. Upon further questioning, appellant gave another version of the events in which he admitted that he in fact was staying at his grandmother's house, that after she had gone to bed he was playing with the gun and that while doing so he accidentally fired a shot which, he first stated, went through the wall of her bedroom and struck her. He later stated the shot was fired accidentally through her open bedroom door. He stated that after she was wounded she said, "Damn you."

He stated that he then panicked, closed the bedroom door, took money and his grandmother's car, and went about the neighborhood telling people that he was a race driver and that he practiced devil worship. He gave money to some acquaintances and bought food and gas for others. He told at least three people that there was a dead body at his home. He did not appear to be nervous or upset. It was established that his grandmother had been fatally wounded on June 7 and her body was not discovered until June 10.

■ Appellant claims the verdict is not supported by sufficient evidence and is contrary to law. He contends that the evidence does not support a finding that he "knowingly" shot his grandmother. He contends that the evidence supports his contention that he "recklessly" shot his grandmother. The evidence in this case shows that appellant was standing only four to six feet from his grandmother when the shot was fired. The jury was entitled to take into consideration that appellant first lied to police officers in stating that he had not yet seen his uncle or grandmother after his arrival from Florida. Then after admitting that he in fact had been staying at his grandmother's house, he gave altered versions of how and from where the fatal shot had been fired. The jury further could take into consideration that although his grandmother was shot on June 7, her body was not discovered until June 10 and during the interim appellant did not seek any aid for his grandmother when he in fact knew her to be alive after the shot had been fired and that he used her money and her automobile to travel around the neighborhood.

■ A jury is entitled to weigh the evidence submitted and base its verdict entirely upon circumstantial evidence. In doing so it is necessary that an inference reasonably tending to support the finding of guilt can be drawn from such evidence. *McCraney v. State* (1983), Ind., 447 N.E.2d 589. There is ample evidence in this record to support the jury's finding that appellant's story of a reckless, accidental shooting of his grandmother was false and that the shooting in fact was done knowingly.

■ Appellant contends the trial court erred when it granted the State's Motion in Limine No. 2. That motion requested that the court order appellant's counsel to refrain from mentioning any evidence of reckless homicide during his opening statement. Appellant takes the position that this foreclosed his presenting the theory of his case to the jury prior to their hearing the evidence. The trial court should have permitted appellant to include his theory of reckless homicide in his opening statement to the jury. However, we find that in the final analysis appellant suffered no detriment by such deprivation. Appellant was permitted full latitude in the recitation of his version of the fatal wounding of his grandmother.

At the close of the evidence, the court gave appellant's Final Instructions Nos. 4 and 5, which defined reckless homicide as per Ind.Code § 35–42–1–5. The court also

included forms on reckless homicide with the verdict forms that went to the jury. In his closing argument, appellant's counsel was permitted to argue that his client was guilty only of reckless homicide. Appellant was in no way deprived of his right to present his theory of reckless homicide to the jury.

Appellant claims the trial court erred in admitting State's Exhibit No. 10, a color videotape of his grandmother's body lying in a pool of blood. This was a tape made by state police at the scene of the crime before the victim's body was moved. Whether to admit photographs depicting the scene of a crime, including wounds inflicted upon the victim, lies within the sound discretion of the trial court. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied* (1988), 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773. Error occurs only if the photographic evidence does not logically tend to prove a material fact and is so gruesome that it obviously is presented to prejudice the jury. *Id.*

Appellant's theory of the shooting of his grandmother was that he was looking at his image in a mirror at his grandmother's end of the hall and as he approached brandishing the gun, he came to a point a few feet from his grandmother's bed in front of her open bedroom door and that as he shifted the position of the gun in his hand it accidentally discharged. The videotape of the scene demonstrated, among other things, the position of the mirror, its location in relation to the victim's bed, and the condition in which she was left following the shooting. Naturally, the depiction of her body lying in a bloody bed is gruesome. However, the gruesome nature of the tape is far outweighed by its value to the jury in understanding the evidence presented. We see no error in the admission of the videotape, nor was it error for the court to deny appellant's motion for mistrial following the showing of the tape to the jury.

Appellant claims that not only the videotape but State's Exhibits Nos. 24, 25, 30, 47, 48, and 49, still pictures of the decedent's body, should not have been introduced in evidence because he stipulated as to the cause of the decedent's death. The fact that appellant's counsel was willing to so stipulate still left in issue the nature of the attack, *i.e.*, whether appellant's claim of reckless homicide was valid, which brought into issue the angle in which the bullet had entered the body and the condition in which his grandmother had been left following the shooting. Under the circumstances, it was proper to admit the photographs to aid the jury in understanding this situation. *See Miller v. State* (1988), Ind., 518 N.E.2d 794.

Here again, of course, the photographs by their nature were gruesome. We would point out that some of the photographs presented by the State were refused by the trial court because they were exceedingly gruesome and added nothing to the facts to be found by the jury. The videotape and the photographs admitted properly served a function. The trial court demonstrated its knowledge of the law on this subject in excluding some of the photographs presented. We find no reversible error in its rulings.

Appellant contends the trial court erred in denying his motion for directed verdict made at the conclusion of the State's case. He bases this on the argument that the State charged he "knowingly" killed his grandmother. He argues that the State had failed to show any evidence whatsoever that the shooting was done knowingly. However, as set out earlier in this opinion, there was ample circumstantial evidence presented upon which the jury could come to the conclusion that appellant's version of the incident was false and that the shooting in fact was done knowingly. Thus it was not error for the trial court to deny appellant's motion for a directed verdict.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.