**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney Geneal
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURT LOWDER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1204-CR-160 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1012-MR-92401

**October 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Curt Lowder appeals his conviction and sentence for murder.[1]  Specifically, Lowder argues there is insufficient evidence to support his murder conviction and that his sentence is inappropriate.  We affirm.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of December 13, 2010, Lowder and his girlfriend, Angela Dodson, returned to their shared residence after consuming alcohol at a local bar.  Lowder and Dodson were joined by their mutual friend Troy Malone and a fourth individual who departed before the incident in question occurred.  At approximately 3:00 a.m., Lowder placed a telephone call to his friend David Applegate in search of beer.  Lowder then drove in his truck to the Applegate residence, accompanied by Dodson and Malone.

At the Applegate residence, Dodson and Malone waited in the truck while Lowder went inside and spoke with Applegate and Applegate's thirteen-year-old son, D.A.  During this conversation, Lowder received a call on his cellular telephone, became angry, and left the Applegate residence without taking any beer.  Lowder testified that Dodson had accidentally called Lowder from the truck on her cellular telephone and that, upon answering this call, Lowder overheard Dodson performing oral sex on Malone.

Outside the Applegate residence, Lowder approached the passenger side of his truck, where Malone was seated, and asked, "What the f*** you watching out for?"  Tr. p. 59.  Malone replied, "What the f*** are you talking about?", and Lowder claimed, "You're out here f***ing around with my old lady."  Tr. p. 59.  Lowder then drew a

---

[1] Ind. Code. § 35-42-1-1 (2010).

handgun from his waistband and struck Malone in the face with it. Malone exited the truck, raised his hands, and backed away before walking off down the street.

At some point during the incident between Lowder and Malone, Lowder's handgun discharged. The bullet struck Dodson in the head, entering through her right eye. At trial, Lowder testified that the gun accidentally fired when he used it to strike Malone in the face. D.A. heard the gunshot from inside the Applegate residence and opened the front door to see Lowder standing at the driver side door of his truck and holding a handgun. Malone was seen standing at the rear of the truck with Dodson inside the bloody truck, slumped down, and not moving. As Malone began to back away from the truck, D.A. heard Lowder ask, "What the f*** do I do now, she's dead?" Tr. p. 95. Lowder then got into his truck and drove away.

Lowder drove to the parking lot of a McDonald's restaurant with Dodson, severely wounded and bleeding, still inside the truck. Lowder testified that he stopped at the restaurant in order to calm his nerves and to compose himself. He then drove Dodson to the emergency room at St. Francis Hospital. Dodson was pronounced dead from a gunshot wound to the head at approximately 5:00 a.m.

At the hospital, Lowder told a security guard that Dodson had been shot at a Marathon gas station. Lowder also placed a telephone call to Dodson's father and gave him the same explanation. Lowder similarly told the responding Indianapolis Metropolitan Police Department ("IMPD") officer, Erin Righam, that Dodson had been shot at a gas station. Officer Ringham testified that Lowder "acted more nervous than

3

upset." Tr. p. 41. And another police officer testified that Lowder "seemed calm" and "didn't appear to be … overly distraught given the situation." Tr. pp. 249-50.

Lowder was taken to the IMPD homicide office to be interviewed as a witness. During his interview with Detective Kevin Duley, Lowder changed his narrative of the shooting three or four times. First, Lowder maintained that Dodson had been shot at a Marathon gas station by an unknown assailant for an unknown reason. Lowder also initially claimed that he had not been at the Applegate residence that morning and that he drove Dodson directly to the hospital after she was shot. Lowder then claimed that Dodson was murdered at the gas station because she "owed some [drug] money to some Mexicans." State's Ex. 41, p. 28. Next, Lowder claimed that he had been at the Applegate residence and believed Dodson and Malone were "messing around" in his truck while he was inside. State's Ex. 41, p. 48. When Lowder confronted Dodson and Malone, the handgun Lowder was brandishing accidentally discharged. At trial, Lowder admitted that he lied to police on multiple occasions and fabricated different accounts of the shooting. Lowder also testified that upon opening the door of the truck, he saw that Malone's pants were unzipped. However, Malone contends that he and Dodson did not "fool around" while Lowder was inside the Applegate residence. Tr. p. 59.

On December 16, 2010, the State charged Lowder with murder and Class C felony battery. The State later added a charge that Lowder was a habitual offender. After a trial on the charges of murder and battery, a jury convicted Lowder of both crimes. A different jury later found Lowder to be a habitual offender. On March 19, 2012, the trial court sentenced Lowder to fifty-five years for murder, enhanced to eighty-five years by

virtue of Lowder's habitual offender status. Lowder was also sentenced consecutively to five years for Class C felony battery, for an aggregate sentence of ninety years. This appeal follows.

## DISCUSSION AND DECISION

**I.** **Whether the State Presented Sufficient Evidence to Sustain Lowder's Murder Conviction**

Lowder claims that the State did not present sufficient evidence from which the jury could convict him of murder. Rather, he claims the evidence only supports a conviction for voluntary manslaughter or reckless homicide.

> When reviewing the sufficiency of evidence to establish the elements of a crime, we consider only the evidence and reasonable inferences drawn therefrom that support the conviction. "We do not reweigh evidence or judge the credibility of witnesses and will affirm the conviction if there is probative evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt." Further, a conviction may be based purely on circumstantial evidence. "On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence." It is enough if an inference reasonably tending to support the conviction can be drawn from the circumstantial evidence.

*Hayes v. State*, 876 N.E.2d 373, 375 (Ind. Ct. App. 2007) (internal citations omitted).

Lowder contends that, because the evidence does not contradict his testimony that the shooting resulted from the accidental discharge of his handgun, there is insufficient evidence that Lowder knowingly or intentionally killed Dodson. However, as stated above, circumstantial evidence is sufficient to sustain a conviction for murder. *Hayes*, 876 N.E.2d at 375.

In *McWherter v. State*, the Indiana Supreme Court held that a jury was entitled to take into consideration that a murder suspect first lied to police and later gave altered

5

versions of how a victim sustained a fatal gunshot wound. 569 N.E.2d 958, 960 (Ind. 1991). The court also held that the jury could consider that the suspect did not seek any aid for the victim during the interim period between the shooting and the victim's ultimate death. *Id.* This was ample evidence to support the jury's finding in *McWherter* that the victim was killed "knowingly" as opposed to "recklessly." *Id.*

Here, the evidence shows that Lowder struck Malone in the face with his handgun and shot Dodson in the face with the same; that Lowder stopped at a McDonald's restaurant before taking Dodson to the hospital; and that he repeatedly lied to police about the shooting. Initially, Lowder told police that Dodson had been shot at a Marathon gas station by an unknown assailant for unknown reasons. He then changed this story, adding that Dodson was murdered because she owed drug money to "some Mexicans." State's Ex. 41, p. 28. Lowder also told police that he had not been to the Applegate residence on the evening of the shooting and that he drove Dodson directly to the hospital. Ultimately, Lowder settled on the story he related at trial, that Dodson and Malone had been "messing around" in his truck and that Lowder's handgun accidentally discharged when he used it to strike Malone in the face. State's Ex. 41, p. 48. This story included Lowder's admissions that he had indeed been at the Applegate residence and had not driven Dodson directly to the hospital after she was shot, stopping instead at a McDonald's restaurant.

While the jury could have concluded that Lowder killed Dodson recklessly or in sudden heat, it was not required to so, and indeed, it did not. Rather, the jury exercised its exclusive prerogative as factfinder to weigh Lowder's testimony against the

6

circumstantial evidence that Lowder knowingly or intentionally killed Dodson. *See Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001). Concluding that this finding is not unreasonable, we affirm Lowder's conviction for murder.

## II. Whether Lowder's Ninety-Year Sentence Is Inappropriate

Lowder claims that his ninety-year sentence is inappropriate in light of his character and the nature of the offense. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

The nature of Lowder's offense is both severe and troubling. Lowder knowingly or intentionally shot his girlfriend in the face from a distance of six inches to three feet, and afterward, he did not take Dodson directly to the hospital. Rather, Lowder drove to a McDonald's parking lot with Dodson slumped over and bleeding in the passenger seat. Lowder also persistently lied to police regarding the shooting and its surrounding circumstances, negatively impacting both the nature of Lowder's crime and his character. Lowder's lies included accusations of drug use against Dodson and an offensive attempt to blame the shooting on "some Mexicans." State's Ex. 41, p. 48.

Lowder's character is further diminished by his extensive criminal record. In addition to his juvenile record and his numerous misdemeanor convictions and probation violations as an adult, Lowder has eight felony convictions to his name. These consist of

7

Class C felony robbery, Class D felony resisting law enforcement, Class D felony theft, two Class D felonies for operating a vehicle while intoxicated, Class D felony operating a vehicle while suspended as a habitual offender, Class C felony operating a vehicle after license forfeited for life, and Class C felony forgery.  In light of the foregoing, we conclude that Lowder's ninety-year sentence is not inappropriate.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.